**UNITED STATES of America, Appellee,**

v.

**Hector BECERRA; Oscar Fabio Moreno, Defendants,**

**Olga Moreno, Defendant–Appellant.**

**No. 43, Docket 95–1700.**

United States Court of Appeals, Second Circuit.

Argued Sept. 11, 1996.

Decided Oct. 8, 1996.

John J. Rice, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., Marian W. Payson, Asst. U.S. Atty., New York City, on the brief), for Appellee.

Frederick H. Cohn, New York City, for Defendant–Appellant.

Before: NEWMAN, Chief Judge, OAKES, and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

## I. BACKGROUND

■ This appeal primarily concerns the validity of the execution of an anticipatory search warrant. In February 1994, customs agents intercepted a package containing 740 grams of cocaine sent from Cali, Colombia to 1055 Walton Avenue, Apartment 6C, Bronx, New York, and addressed to Olga Moreno.[1] In order to secure an arrest, the agents decided to attempt a controlled delivery of a substitute parcel to Moreno. They first verified with the utility and telephone companies that Moreno lived at the address listed on the package. Two agents posing as Federal Express representatives then phoned Moreno, who stated that she would be at home to receive the parcel. Subsequently, on Febru-

ary 18, the government applied for an anticipatory search warrant. An anticipatory warrant is a warrant that is perfected upon the occurrence of a specified future event. *United States v. Garcia,* 882 F.2d 699, 702 (2d Cir.), *cert. denied,* 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989). A magistrate judge granted the application and issued an anticipatory warrant that, by its terms, would be triggered by the delivery of the parcel.

On February 22, 1994, a customs agent posing as a Federal Express employee brought the parcel to Apartment 6C. Olga Moreno answered the door, signed for the parcel, and accepted it. About five minutes later, one Hector Becerra left the apartment with the parcel. Agents then entered the apartment and conducted a search pursuant to their warrant. Present in the apartment, in addition to Olga Moreno, were Oscar Moreno and Luis Palacio, each of whom was detained while the search proceeded. The agents found two scales—one of which had trace amounts of cocaine—in Oscar Moreno's bedroom, approximately 90 grams of heroin in the hall closet outside Oscar Moreno's bedroom, and two scales with cocaine residue and a bag containing various types of ammunition in the front hall closet.

On February 14, 1995, Olga Moreno and Oscar Moreno were indicted on three counts: (1) conspiracy to possess with intent to distribute cocaine and heroin in violation of 21 U.S.C. § 846, (2) possession with intent to distribute heroin in violation of 21 U.S.C. §§ 812, 841, and 18 U.S.C. § 2; and (3) aiding and abetting in the maintenance of a place for the purpose of manufacturing, distributing, or using controlled substances in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2. At trial, a witness, Pedro Silva–Maldonado testified that he had purchased cocaine from Olga and Oscar Moreno inside Apartment 6C in December, 1992. On June 15, 1995, the jury convicted Olga Moreno on counts one and three and acquitted her on count two; a mistrial was declared as to Oscar Moreno. On December 19, 1995, the court sentenced Olga Moreno to concurrent

---

**1.** While both Olga Moreno and Oscar Fabio Moreno are listed as appellants, only Olga Moreno's appeal is before us. The surname Moreno, standing alone, refers to her.

terms of imprisonment of 63 months to be followed by a four-year term of supervised release. This appeal, in which Moreno challenges the validity of the search warrant, the admissibility of the ammunition, and the sufficiency of the evidence, ensued.

## II. DISCUSSION

### A. Validity of the Warrant

■ We review legal issues relating to the validity of search warrants *de novo.* *United States v. Moetamedi,* 46 F.3d 225, 228 (2d Cir.1995).

■ Moreno first maintains that anticipatory warrants are *per se* unconstitutional. Whatever arguments could be made for this position, it cannot be accepted by us because, as the defendant recognizes, the law of this circuit is expressly to the contrary. *See Garcia,* 882 F.2d at 702–03. Second, the defendant avers that there was no probable cause for the issuance· of the warrant. This argument fails because the fact that a package containing cocaine is sent to a particular address and it, or a substitute, is accepted at that address, establishes probable cause to search those premises. *See id.* at 702 ("[W]hen a government official presents independent evidence indicating that delivery of contraband will, or is likely to, occur, and when the magistrate conditions the warrant on that delivery, there is sufficient probable cause to uphold the warrant."). Third, the defendant argues that the warrant was stale. This claim is frivolous, given that the warrant was executed about five minutes after the delivery of the parcel, and that "[n]arcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness." *United States v. Rowell,* 903 F.2d 899, 903 (2d Cir.1990) (citation and internal quotation marks omitted).

■ Finally, the defendant asserts that the warrant became invalid when Becerra took the package off the premises. This proposition is without merit because the warrant (1) explicitly stated that it would be triggered by the delivery of the parcel, and (2) was in no way conditioned on the continued presence of the package. Moreover, common sense dictates that a suspect should not be able to evade the effects of a warrant simply by getting rid of the supposed contraband or its container. The only support Moreno proffers for this position is a phrase in *Garcia* that the issuance of a warrant "rests . . . on the expectation that the contraband will remain . . . until the warrant is executed." *Garcia,* 882 F.2d at 702. This quotation, however, is not only dictum, but dictum taken out of context. "Contraband" in the quotation refers to the contraband that is the object of a search pursuant to a regular warrant, not the parcel whose delivery triggered an anticipatory warrant.

■ In order to lay any perceived ambiguity in *Garcia* to rest, we here clarify that an anticipatory warrant whose perfection requires no more than the delivery of a package to, or in the presence of, the suspect, is not invalidated because the parcel is taken off the premises after delivery. The package's relevance to such a warrant is that it suggests a relationship between drug dealers and a suspect's premises. The warrant remains contingent until delivery because some uncertainty exists as to whether the suspect will give further credence to that relationship by accepting the package. When the suspect accepts the parcel, that uncertainty is resolved. At that point, the package becomes irrelevant. Predicating the validity of the warrant on the continued presence of the package makes much ado out of something whose significance has in fact been exhausted.

### B. Admissibility of Evidence

Moreno next argues that the district court erred in admitting as evidence the ammunition found in her apartment, and in allowing an expert to identify it at trial. We review a district court's decision to admit evidence for abuse of discretion. *United States v. Beverly,* 5 F.3d 633, 638 (2d Cir.1993). Moreno's position is puzzling, given that we have "repeatedly approved the admission of firearms as evidence of narcotics conspiracies, because drug dealers commonly keep firearms on their premises as tools of the trade." *United States v. Vegas,* 27 F.3d 773, 778 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 284, 130

L.Ed.2d 200 (1994) (citation and internal quotation marks omitted). Furthermore, Moreno offers no authority for her proposition that testimony identifying these "tools of the trade" is inappropriate in such circumstances. We therefore find that the district court did not abuse its discretion in allowing the ammunition and the testimony about it to be admitted.

## C. Aider and Abettor Liability

Moreno finally contends that there was insufficient evidence to convict her as an aider and abettor in the knowing maintenance of a place for the purpose of manufacturing, distributing, or using a controlled substance. We review the district court's determinations about the sufficiency of evidence *de novo,* but draw all inferences from any evidence before the jury in the government's favor. *United States v. Sirois,* 87 F.3d 34, 38 (2d Cir.1996). Moreno's specific claim is that the jury could not convict her as an aider and abettor because the identity of the principal is unclear. We have held that where such confusion exists, "an indictment charging aiding and abetting may be proven by demonstrating that the aider and abettor was in fact a principal." *United States v. Knoll,* 16 F.3d 1313, 1323 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994).

Moreno's conviction as an aider and abettor was not erroneous since the jury had ample evidence on which to convict her as a principal. To convict a defendant as a principal under 21 U.S.C. § 856(a)(1), the government was required to establish beyond a reasonable doubt that the defendant (1) opened or maintained a place; (2) for the purpose of distributing or packaging controlled substances; and (3) did so knowingly. *See United States v. Onick,* 889 F.2d 1425, 1431 (5th Cir.1989). The jury was properly charged, and the government met its burden of proof, as to each of these elements. Olga Moreno had lived in Apartment 6C for four years. The utility and telephone bills were in her name. There was evidence that she had conducted a prior cocaine deal (with Silva–Maldonado) from that apartment. She accepted delivery of the substitute parcel. A

hall closet in the common living area contained ammunition and scales with cocaine residue, as well as a jacket containing a money transmittal receipt in her name for money sent to Becerra's home in Cali, Colombia. Another common hall closet contained heroin and cocaine. Clearly, there was sufficient evidence to convict Moreno as a principal. Accordingly, there was also sufficient evidence to convict her as an aider and abettor under *Knoll.*

## III. CONCLUSION

The district court did not err in upholding the validity of the warrant. It properly admitted as evidence the ammunition found in Moreno's apartment and permitted an expert to identify it at trial. It also correctly found that there was sufficient evidence to convict Moreno as an aider and abettor in the knowing maintenance of a place for the manufacture, distribution, and use of controlled substances.

Affirmed.