STATE OF NORTH CAROLINA v. EDDIE DARNELL BALDWIN

No. COA02-1594

(Filed 2 December 2003)

### 1. Search and Seizure— motion to suppress—drugs—anticipatory search warrant

The trial court did not err in a trafficking in cocaine by possession, trafficking in cocaine by transportation, conspiracy to traffic in cocaine, possession with intent to sell or deliver marijuana, and maintaining a dwelling for the purpose of keeping or selling controlled substances case by denying defendant's motion to suppress evidence seized pursuant to an anticipatory search warrant, because: (1) although defendant contends findings of fact were required for denying the motion to suppress, there was no dispute regarding the events of the search or the items seized; and (2) the anticipatory search warrant met the three requirements of *State v. Smith,* 124 N.C. App. 565 (1996).

### 2. Evidence— SBI lab report—stipulation package contained cocaine—plain error analysis

The trial court did not commit plain error in a trafficking in cocaine by possession, trafficking in cocaine by transportation, conspiracy to traffic in cocaine, possession with intent to sell or deliver marijuana, and maintaining a dwelling for the purpose of

keeping or selling controlled substances case by admitting the State Bureau of Investigation (SBI) lab report and other evidence regarding the nature of the substance in the pertinent package, because defendant's stipulation that the package contained cocaine meant any error in the admission of the evidence as to the nature of the substance in the package did not rise to the level of plain error.

3. **Criminal Law— trial court's remarks to jury—verdict not coerced**

The trial court did not coerce a verdict in a trafficking in cocaine by possession, trafficking in cocaine by transportation, conspiracy to traffic in cocaine, possession with intent to sell or deliver marijuana, and maintaining a dwelling for the purpose of keeping or selling controlled substances case by its remarks to the jury at the beginning of the court week that allegedly intimated to the jurors that they would be held indefinitely without food until they reached a verdict, because: (1) the trial court's remarks, although ill-advised, were made to the venire as a whole a full two days prior to the jurors' deliberations in defendant's case; (2) the judge gave no indication that he expected the jury to stay until they reached a verdict, he did not mention that the court system would be burdened if they had to retry the case or that he would be irritated with the jury if they could not reach a verdict; (3) there was no suggestion by the trial court during the trial that the jurors would be required to continue their deliberations without food or an evening recess until they reached a verdict and the jurors made no request to recess the deliberations; and (4) defendant has not shown that absent the trial court's remarks, the jury would likely have reached a different verdict.

4. **Drugs— trafficking in cocaine by possession—trafficking in cocaine by transportation—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charges of trafficking in cocaine by possession and trafficking in cocaine by transportation, because: (1) an inference of defendant's knowledge of the presence of cocaine in the pertinent package can be drawn from his capability and intent to control the package by taking it inside his residence, placing it in a car, and then moving it to another car; and (2) surveillance equipment, guns, and plastic bags containing traces of cocaine were found in the residence.

STATE v. BALDWIN

[161 N.C. App. 382 (2003)]

**5. Drugs— possession of marijuana with intent to sell or deliver—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of possession of marijuana with intent to sell or deliver, because: (1) the marijuana, along with surveillance equipment and other drug paraphernalia, was found in a common area of a house that was listed on defendant's driver's license and car registration as his home address; (2) defendant received mail at this address; and (3) although defendant shared the house with at least one other individual, a reasonable inference may be drawn that defendant had the power to control the use and disposition of the substance since it was located in a common area of the residence.

**6. Drugs— conspiracy to traffic in cocaine—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of conspiracy to traffic in cocaine, because: (1) defendant admitted to living with another person and also admitted the house had surveillance equipment in place; and (2) defendant signed for the package that contained cocaine, placed it in his car, and then moved it to another car which was subsequently driven away by his roommate.

**7. Drugs— maintaining dwelling for purpose of keeping or selling controlled substances—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of maintaining a dwelling for the purpose of keeping or selling controlled substances because despite the fact that occupancy was the only factor shown by the evidence in this case, evidence that defendant received mail at the address for approximately one year, the fact that his driver's license showed the address as his home address, and that his car was registered at the address showed more than temporary occupancy.

**8. Drugs— maintaining dwelling for purpose of keeping or selling controlled substances—misdemeanor**

The judgment against defendant for maintaining a dwelling for the purpose of keeping or selling controlled substances is remanded to correctly reflect the offense as a misdemeanor.

STATE v. BALDWIN

[161 N.C. App. 382 (2003)]

Appeal by defendant from judgment entered 15 May 2002 by Judge Jerry Braswell in Wayne County Superior Court. Heard in the Court of Appeals 16 September 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Grady L. Balentine, Jr., for the State.*

*Jeffrey Evan Noecker for defendant appellant.*

MARTIN, Judge.

Eddie Darnell Baldwin appeals from judgments entered upon his conviction by a jury of trafficking in cocaine by possession, trafficking in cocaine by transportation, conspiracy to traffick in cocaine, possession with intent to sell or deliver marijuana, and maintaining a dwelling for the purpose of keeping or selling controlled substances.

The evidence at trial tended to show that in July 2001, United States Postal Inspector Charles Thompson was notified by his counterpart in Phoenix, Arizona that a suspect package was being sent through the mail to 1233 Union Grove Church Road, Freemont, North Carolina. After Thompson intercepted the package in Raleigh, drug dogs picked the suspect package out of a line-up with other packages. Once Thompson obtained a federal search warrant to seize and open the package, he found three bricks of cocaine, potpourri, air fresheners and newspapers inside. Although Thompson was not qualified as an expert in chemical or scientific testing, he performed a field test on the substance in the package and determined it was cocaine.

Thompson then contacted law enforcement officers in Wayne County to develop a controlled delivery plan for the package. The package was resealed with an electronic monitoring device inserted inside to alert officers if and when the package was opened. Sergeant Daniel Peters of the Goldsboro Wayne County Drug Squad obtained an anticipatory search warrant of the delivery address. The pertinent part of the warrant stated:

> Once the package has been deliver [sic] and accepted by the occupants of the address the search warrant will be served to search for the package and the participants of the crime. This warrant is anticipatory and bases [sic] on the delivery of the Express Mail Package, if for any reason the package is not delivered or is rejected by the occupants of the residence the warrant will not be served.

After other law enforcement officers were stationed around the house to assist, Thompson approached the house with the package addressed to Sean Smith. A black male came out of the house as Thompson approached and indicated, when asked, that he was Sean Smith. The man took the package and went back inside the house. At trial, Thompson identified the man as defendant, Eddie Baldwin.

Within a few minutes of his receipt of the package, Baldwin came out of the house with the package, placed it in the trunk of a Pontiac Bonneville that was parked in the yard and then returned to the house. About an hour later, defendant again came out of the house, removed the package from the Pontiac and placed it in the back seat of a Toyota Camry, also parked in the yard. Another black male came out of the house and got into the driver's seat of the Toyota. Although there was still no indication from the monitoring device that the package had been opened, officers approached the car. As they approached, the driver took off in the Toyota across a soybean field and wrecked into a ditch. The driver ran into the woods and was never found, but officers were able to retrieve the unopened package from the Toyota.

While officers were in pursuit of the driver of the Toyota, two other officers approached the house and demanded that all occupants come out. After the defendant came out of the house and was placed under arrest, one officer searched the house to make certain there was no one else inside. Other officers then entered and conducted a thorough search of the house, seizing plastic bags with white powder, guns, marijuana, surveillance equipment, and mail.

---

## I.

**[1]** Defendant argues the trial court erred in denying his motion to suppress evidence seized pursuant to the anticipatory search warrant. First, defendant contends the trial court failed to state any findings of fact in its order denying the motion to suppress. Although the general rule is that the trial court must make findings of fact and conclusions of law after hearing a motion to suppress, findings are not required if there is no material conflict in the evidence at the suppression hearing. *State v. Parks*, 77 N.C. App. 778, 781, 336 S.E.2d 424, 426 (1985), *disc. review denied*, 316 N.C. 384, 342 S.E.2d 904 (1986). In the present case, there was no dispute regarding the events of the search or the items seized. Because the conflict was in the interpretation of the scope of the search war-

rant and not a conflict in the evidence, the trial court was not required to make findings of fact.

Defendant also contends that the motion to suppress should not have been denied because at the time of the search, the package was not present in the house and, therefore, the search exceeded the scope of the warrant executed. An anticipatory search warrant, by definition, is "not based on present probable cause, but on the expectancy that, at some point in the future probable cause will exist." *State v. Smith*, 124 N.C. App. 565, 571, 478 S.E.2d 237, 241 (1996). In order to eliminate the opportunity for government agents to use their own discretion, the court in *Smith* established three requirements that must be observed before a search is executed pursuant to an anticipatory search warrant:

> (1) The anticipatory warrant must set out, on its face, explicit, clear, and narrowly drawn triggering events which must occur before execution may take place; (2) Those triggering events, from which probable cause arises, must be (a) ascertainable, and (b) preordained, meaning that the property is on a sure and irreversible course to its destination; and finally, (3) No search may occur unless and until the property does, in fact, arrive at that destination.

*Id.* at 577, 478 S.E.2d at 245. In *Smith*, the Court opined that once the anticipatory search warrant met these three requirements, the nexus between "the criminal act, the evidence to be seized and the identity of the place to be searched" was assured. *Id.* When a warrant is executed after the triggering event occurs, probable cause has been established. *State v. Phillips*, 160 N.C. App. 549, 586 S.E.2d 540 (2003). Once there is probable cause that a crime has been committed and the evidence of that crime likely will be found during the search, the object of the search warrant does not need to be present. *Smith*, 124 N.C. App. at 571, 478 S.E.2d at 241; *see U.S. v. Becerra*, 97 F.3d 669 (2nd Cir. 1996) (holding an anticipatory search warrant, whose triggering event is the delivery of a package, is not invalidated because the package is taken off the premises).

Defendant concedes that the anticipatory search warrant met the first two prongs of the requirement. The warrant clearly established explicit triggering events on its face which were definable and preordained. Although defendant argues that the State did not meet the requirements of *Smith* since the package was no longer in the house when the search occurred, the third prong of *Smith* requires only

that the package arrive at the location specified on the warrant. It is undisputed that the package was delivered, accepted, and taken into the house by the defendant; therefore the third prong of *Smith* was met. Since the anticipatory search warrant met the three requirements of *Smith*, once the package arrived, the nexus between the package and the residence was established. Even though the package was no longer on the premises, delivery of the package linked the house to criminal activity inside, giving rise to probable cause for the search. In addition, since the warrant specifically allowed the officers to search the premises of 1233 Union Grove Church Road to find and seize cocaine generally and to identify the participants of the crime, the officers' thorough search of the premises was within the scope of the warrant. Therefore, we hold the trial court correctly denied defendant's motion to suppress evidence seized pursuant to the anticipatory search warrant.

II.

[2] Defendant next contends the trial court committed plain error in admitting the State Bureau of Investigation (SBI) lab report and other evidence regarding the nature of the substance in the package. Plain error is "always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *'fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation omitted).

N.C. Gen. Stat. § 90-95(g) (2001) provides that an SBI laboratory report is admissible in a criminal proceeding without further authentication as evidence of the nature, quality, and amount of the substance analyzed if (1) the State notifies the defendant of its intent to admit the report into evidence at least 15 days prior to trial and provides a copy of the report to the defendant, and (2) the defendant fails to notify the State at least five days before trial that he objects to the introduction of the report into evidence. The record in the present case is unclear as to whether the State notified defendant, as required, of its intent to admit the report. There is reference in the transcript, albeit vague, that the State filed a Notice of Intention to Introduce Evidence at Trial on 9 November 2001, well in advance of the May 2002 trial, but that reference does not indicate what evidence the State intended to introduce at trial. Defendant contends that had the nature of the substance not been improperly admitted, the jury's verdict as to trafficking in cocaine by possession would have

been different. However, during the trial, the defendant stipulated that "the cocaine is the cocaine, that it weighs what it weighs." Having stipulated that the package contained cocaine, any error in the admission of the evidence as to the nature of the substance contained in the package cannot rise to the level of plain error.

### III.

[3] Defendant also assigns error to certain remarks made by the trial court to the jury, contending such remarks had the effect of coercing a verdict. Because defendant failed to object at trial he has waived review of this assignment of error unless it is found to be plain error. N.C.R. App. P. 10(b)(2). "A plain error is one 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.' " *State v. Fowler*, 157 N.C. App. 564, 566, 579 S.E.2d 499, 501 (2003) (citation omitted). Moreover, plain error has been applied only to jury instructions and questions involving the admission of evidence. *State v. Wiley*, 355 N.C. 592, 615, 565 S.E.2d 22, 39-40 (2002), *cert. denied*, 537 U.S. 1117, 154 L. Ed. 2d 795 (2003).

In order to determine if a trial court's conduct is coercive, this Court must consider, looking at the totality of the circumstances, the following factors: whether the court suggested to the jury that they would be held until they reached a verdict, whether the jury believed the court was irritated with them for not reaching a verdict, and whether the court told the jury it would be burdensome to retry the case if they did not reach a verdict. *State v. Beaver*, 322 N.C. 462, 464, 368 S.E.2d 607, 608 (1988).

In the trial court's initial remarks to the prospective jurors on the first day of the court session, he explained generally the schedule he would follow for the week. His remarks included the following statement:

> [T]here's typically one exception to my five o'clock rule, and that is if you're out deliberating on a case you'll deliberate, and deliberate, and deliberate, until you finish. You decide that. It won't end at five o'clock. And we'll stay here until you finish. Now I had a jury in Charlotte once that they were deliberating about a quarter to nine p.m. and they sent a message out saying that can we go get pizza? And I sent a message back in, yes, as soon as you finish deliberating. So it will be that way. Now obviously I won't send you out at a quarter to five on a case, we'll try to manage the

time better, but when you go out to make a decision I'll keep you out there until you make your decision so there won't be any constraints, time constraints on you as far as the court is concerned, but I don't want you to think that okay, it's getting five o'clock, we can't decide today, we'll come back tomorrow, it's not going to work that way either.

The judge continued with other explanation concerning the trial process. At the conclusion of his remarks, the jurors were excused until the afternoon while the court considered preliminary matters relating to the case. A jury was selected for defendant's trial on Monday afternoon, 13 May 2002; the trial began and lasted for approximately two days. After a lunch recess from approximately 12:30 p.m. until approximately 2:00 p.m. on Wednesday, 15 May 2002, the jury received the case and retired to deliberate at approximately 4:00 p.m. The jury reached a verdict shortly after 7:00 p.m. Defendant argues that the trial court's remarks at the beginning of the court week, coupled with the timing of the jury deliberations, intimated to the jurors that they would be held indefinitely without food until it reached a verdict.

The trial court's remarks were made to the entire jury pool in explanation of the schedule the jurors could expect to follow during the week. Without reaching the question whether the plain error doctrine applies to these remarks, under the circumstances of this case we do not believe the trial court's remarks, ill-advised though they may have been, afford defendant a new trial. The remarks were made to the venire as a whole a full two days prior to the jurors' deliberations in defendant's case. Moreover, at the end of court on Tuesday, the trial court informed the jurors, "I anticipate that you may get this case sometime tomorrow, and then you'll have all the time you feel like you need to make a decision so don't rush to judgment . . . ." On Wednesday afternoon, during jury instructions, the judge gave no indication that he expected the jury to stay until they reached a verdict, he did not mention that the court system would be burdened if they had to retry the case or that he would be irritated with the jury if they could not reach a verdict. During their deliberations, the jurors requested, shortly after 6:00 p.m., to review certain evidence; in responding to that request, there was no suggestion by the trial court that they would be required to continue their deliberations without food or an evening recess until they reached a verdict and the jurors made no request to recess the deliberations. Finally, defendant has not shown that absent the trial court's remarks, the

jury would likely have reached a different verdict. This assignment of error is overruled.

## IV.

[4] Next, defendant argues the trial court erred in denying his motion to dismiss. In determining whether to grant a motion to dismiss, the court must determine, in the light most favorable to the State, if there is substantial evidence of each essential element of the offense charged. *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (citation omitted). The evidence can be direct or circumstantial, but must give rise to a reasonable inference of guilt in order to withstand the motion to dismiss. *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988).

Trafficking in cocaine by possession and trafficking in cocaine by transportation, in violation of N.C. Gen. Stat. § 90-95(h)(3) (2001), require the State to prove that the substance was knowingly possessed and transported. *State v. Munoz*, 141 N.C. App. 675, 684, 541 S.E.2d 218, 224, *cert. denied*, 353 N.C. 454, 548 S.E.2d 534 (2001). Possession can be actual or constructive. *State v. Weldon*, 314 N.C. 401, 403, 333 S.E.2d 701, 702 (1985). When the defendant does not have actual possession, but has the power and intent to control the use or disposition of the substance, he is said to have constructive possession. *State v. Butler*, 356 N.C. 141, 146, 567 S.E.2d 137, 140 (2002).

Defendant asserts the State failed to prove he knew there was cocaine in the package. Although the package was addressed to someone else, defendant identified himself as the addressee and signed for the package using the name of the addressee. An inference of defendant's knowledge of the presence of the cocaine can be drawn from his capability and intent to control the package by taking it inside, placing it in the Pontiac and then moving it to the Toyota. In addition, surveillance equipment, guns, and plastic bags containing traces of cocaine were found in the residence. Considering the sum of the evidence in the light most favorable to the State, we conclude there was sufficient evidence from which a jury could reasonably infer that the defendant knowingly possessed cocaine.

[5] Defendant also asserts that there was not substantial evidence to support his conviction for possession of marijuana with intent to sell

or deliver. Under N.C. Gen. Stat. § 90-95(a), the State is required to prove two elements: (1) the defendant possessed marijuana and (2) he intended to sell or deliver it. *State v. Creason*, 313 N.C. 122, 129, 326 S.E.2d 24, 28 (1985). "Although it is not necessary to show that an accused has exclusive possession of the premises where contraband is found, where possession of the premises is nonexclusive, constructive possession of the contraband materials may not be inferred without other incriminating evidence." *State v. Brown*, 310 N.C. 563, 569, 313 S.E.2d 585, 588-89 (1984). However, the presence of material normally used for the packaging of narcotics gives rise to an inference of an intent to sell or deliver. *State v. Baxter*, 285 N.C. 735, 738, 208 S.E.2d 696, 698 (1974).

In this case, the marijuana, along with surveillance equipment and other drug paraphernalia, was found in a common area of a house that was listed on defendant's driver's license and car registration as his home address. He also received mail at the address. Although the evidence tends to show that defendant shared the house with at least one other individual, considering the totality of the circumstances, a reasonable inference may be drawn that defendant had the power to control the use and disposition of the substance since it was located in a common area of his residence. Therefore, sufficient evidence of constructive possession was presented.

Defendant relies on *State v. Wiggins*, 33 N.C. App. 291, 235 S.E.2d 265, *cert. denied*, 293 N.C. 592, 241 S.E.2d 513 (1977), where this Court found that the possession of 215.5 grams of marijuana, without more, was insufficient to raise an inference of intent to distribute. Here, however, police found 414.5 grams of marijuana, almost double the amount found in *Wiggins* and more than a normal amount for individual use. In addition, police found surveillance equipment, guns, and a bag with what appeared to be a cutting agent for cocaine, items that are normally used by those who deal in illicit drugs. Based on the evidence presented, we hold there was sufficient evidence as to each element of the crime to overcome defendant's motion to dismiss the charge of possession of marijuana with intent to sell and deliver.

[6] Defendant further argues the State did not present substantial evidence of a conspiracy. A conspiracy is an agreement between two or more people to commit an unlawful act or to do a lawful act in an unlawful manner. *State v. Massey*, 76 N.C. App. 660, 661-62, 334 S.E.2d 71, 72 (1985). Proof of an express agreement is not required;

evidence showing a "mutual, implied understanding will suffice to withstand defendant's motion to dismiss." *State v. Worthington*, 84 N.C. App. 150, 162, 352 S.E.2d 695, 703, *disc. review denied*, 319 N.C. 677, 356 S.E.2d 785 (1987).

During his testimony, defendant admitted to living with another person, Ismail Sabur, and also admitted the house had surveillance equipment in place. Defendant signed for the package that contained cocaine, placed it in his car, then moved it to another car which was subsequently driven away by Sabur. From this evidence, a jury could infer an agreement between Sabur and defendant.

**[7]** Defendant also maintains there was not sufficient evidence to prove he violated N.C. Gen. Stat. § 90-108(a)(7) by knowingly keeping or maintaining a dwelling house for the purpose of keeping or selling a controlled substance. Factors which may be taken into consideration in determining whether a person keeps or maintains a dwelling include ownership of the property, occupancy of the property, repairs to the property, payment of utilities, payment of repairs, and payment of rent. *State v. Frazier*, 142 N.C. App. 361, 365, 542 S.E.2d 682, 686 (2001). Since none of the factors is dispositive, the determination will depend on the totality of the circumstances. *Id.*

Despite the fact that occupancy was the only factor shown by the evidence in this case, the defendant received mail at the address for approximately one year, his driver's license showed the address as his home address, and his car was registered at the address. Taken together, this evidence shows more than temporary occupancy and points instead to defendant's maintaining the house. This assignment of error is overruled.

V.

**[8]** Finally, the defendant argues the trial court erred in entering judgment against the defendant for the felony of maintaining a dwelling although the jury returned a verdict of guilty of knowingly maintaining a dwelling, a Class I misdemeanor. N.C. Gen. Stat. § 90-108(a)(7) (2001). Although the judgment form referenced the correct statute, it incorrectly referenced the charge as a felony. The judgment must be corrected to reflect the offense as a misdemeanor.

Defendant's remaining assignments of error were not brought forward in the brief and are therefore deemed abandoned. N.C. R. App. P. 28(a).

**GOODRICH v. R.L. DRESSER, INC.**

[161 N.C. App. 394 (2003)]

No error in trial; remanded for correction of judgment.

Judges BRYANT and GEER concur.