STROUD, Judge.
 

 *799
 
 Richard Dulin, III ("defendant") appeals from judgments entered upon jury verdicts finding him guilty of possession with the intent to sell or deliver marijuana and possession of drug paraphernalia. Defendant contends that the trial court erred in denying his motion to dismiss. We find no error in part, vacate in part, and remand.
 

 *800
 
 I. Background
 

 Around noon on 10 January 2012, Officers Shuskey and Honaker began watching a house in Winston-Salem. At 12:01 p.m., the officers observed a man working on a white truck in the carport of the house. Officer Honaker noted that at some point, the white truck left the house, but he did not record whether the man left the house. Between 12:01 p.m. and 1:38 p.m., several people traveled to and from the house, by either car, moped, bicycle, or on foot, each spending only a few minutes at the house. At 1:39 p.m., defendant left the house driving a black truck. During defendant's absence, there was no activity at the house, other than a man who briefly walked in front of it. At 3:02 p.m., defendant returned in the black truck and parked it in front of the house. At 3:09 p.m., a man on a bicycle arrived and approached defendant in front of the house. The two men shook hands "as if they were passing an item back and forth."
 

 A few minutes later, another man walked by the police officers and noticed their presence. He walked over to defendant and pointed out their location to him. Defendant immediately began using his cell phone. Defendant then got in the truck, drove it behind the house, and then returned a minute later, parking it in front of the house again. Defendant began washing the truck while the man who had informed him of the officers' location began raking leaves in the yard.
 

 Officers Shuskey and Honaker, along with other police officers, detained defendant and the other man while they were working in the front yard and began searching for drugs. Defendant admitted to one of the police officers that he had a "blunt" in the black truck. Officer Shuskey searched the black truck that defendant had been driving and washing and found a small bag of marijuana in the console. Another police officer searched one of the house's multiple bedrooms and found marijuana located in a picture frame behind a photograph of defendant. The police officer also found a feminine deodorant bar in the bedroom.
 

 Officer Barker searched a different room of the house which appeared to be a common living area as it had a television, couch, bookcases, and other "general furniture items[.]" There, he found a marijuana grinder, a digital scale with residue on it, $400 in cash tucked between books on a bookshelf, packaging material, plastic bags, and some clear glass jars which had a green leafy residue and smelled of unburnt marijuana. Officer Barker testified that the digital scale was in plain view and that the marijuana grinder was on the bookshelf where he found the cash.
 

 *806
 

 *801
 
 Another police officer searched the kitchen and found an off-white powdery substance splattered in a microwave and on razor blades lying on the kitchen counter. At trial, Amanda Battin, a forensic scientist, testified that there was cocaine residue on one of the razor blades. In their search, the police officers also found a piece of mail addressed to defendant at the house's address, as well as a photograph of defendant and another person.
 

 Sergeant McDonald searched a part of the yard, to the right of the house, where Officers Shuskey and Honaker had observed defendant driving the truck. There, he found an uncovered "flat-bottom style fishing boat" on a trailer that was located in an open, unfenced area roughly seventy feet from the side of the house. He also observed a "freestanding swing" somewhere between the house and the boat. In plain view under the boat's steering console, he found four or five individually packaged bags of marijuana, all contained within a large foil package. At trial, Officer Honaker opined that this marijuana was packaged for sale, and Ms. Battin testified that the total amount of marijuana recovered during the search was more than one half of an ounce. Officers Shuskey and Honaker did not testify that they observed defendant near the boat, nor did they testify that they heard defendant leave the truck when he was out of their view or do anything that would indicate that he may have hidden the marijuana in the boat. The police did not check to whom the boat was registered.
 

 On or about 4 June 2012, a grand jury indicted defendant for possession with intent to sell or deliver marijuana, felony possession of cocaine, and possession of drug paraphernalia.
 
 See
 
 N.C. Gen.Stat. §§ 90-95(a)(1), (3), -113.22 (2011). At trial, defendant moved to dismiss at the close of the State's evidence and at the close of all the evidence, and the trial court denied both motions. On or about 10 September 2014, a jury found defendant guilty of possession with intent to sell or deliver marijuana and possession of drug paraphernalia and not guilty of possession of cocaine. On or about 11 September 2014, the trial court entered consecutive sentences of six to 17 months of imprisonment for the offense of possession with intent to sell or deliver marijuana and 120 days of imprisonment for the offense of possession of drug paraphernalia. The trial court suspended the two sentences and placed defendant on 36 months of supervised probation, which included an active term of 120 days of imprisonment as a condition of special probation. Defendant gave notice of appeal in open court.
 

 *802
 
 II. Motion to Dismiss
 

 Defendant solely contends that the trial court erred in denying his motion to dismiss because insufficient evidence established that he actually or constructively possessed drug paraphernalia or marijuana with intent to sell or deliver.
 

 A. Standard of Review
 

 Evidence is sufficient to sustain a conviction when, viewed in the light most favorable to the State and giving the State every reasonable inference therefrom, there is substantial evidence to support a jury finding of each essential element of the offense charged, and of defendant's being the perpetrator of such offense.
 

 Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion. In considering a motion to dismiss, the trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility. Evidence is not substantial if it is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, and the motion to dismiss should be allowed even though the suspicion so aroused by the evidence is strong. This Court reviews the denial of a motion to dismiss for insufficient evidence
 
 de novo.
 

 State v. Robledo,
 

 193 N.C.App. 521
 
 , 524-25,
 
 668 S.E.2d 91
 
 , 94 (2008) (citations, quotation marks, brackets, and ellipses omitted). "In deciding whether the trial court's denial of [a] defendant's motion to dismiss violated [the] defendant's due process rights, this Court must determine whether
 
 'any
 
 rational trier of fact could have found the essential
 
 *807
 
 elements of the crime beyond a reasonable doubt.' "
 
 State v. Penland,
 

 343 N.C. 634
 
 , 648,
 
 472 S.E.2d 734
 
 , 741 (1996) (quoting
 
 Jackson v. Virginia,
 

 443 U.S. 307
 
 , 319,
 
 99 S.Ct. 2781
 
 , 2789,
 
 61 L.Ed.2d 560
 
 , 573 (1979) ),
 
 cert. denied,
 

 519 U.S. 1098
 
 ,
 
 117 S.Ct. 781
 
 ,
 
 136 L.Ed.2d 725
 
 (1997).
 

 B. Possession of Drug Paraphernalia
 

 A person is in "possession" of a controlled substance within the meaning of G.S. 90-95 if they have the power and intent to control it; possession need not be actual. The State is not required to prove that the defendant owned
 
 *803
 
 the controlled substance ... or that defendant was the only person with access to it.
 

 ... Where control of the premises is nonexclusive, however, constructive possession may not be inferred without other incriminating circumstances.
 

 State v. Rich,
 

 87 N.C.App. 380
 
 , 382,
 
 361 S.E.2d 321
 
 , 323 (1987) (citations and quotation marks omitted).
 

 Incriminating circumstances relevant to constructive possession
 

 include evidence that defendant: (1) owned other items found in proximity to the contraband; (2) was the only person who could have placed the contraband in the position where it was found; (3) acted nervously in the presence of law enforcement; (4) resided in, had some control of, or regularly visited the premises where the contraband was found; (5) was near contraband in plain view; or (6) possessed a large amount of cash.
 

 Evidence of conduct by the defendant indicating knowledge of the controlled substance or fear of discovery is also sufficient to permit a jury to find constructive possession. Our determination of whether the State presented sufficient evidence of incriminating circumstances depends on the totality of the circumstances in each case. No single factor controls, but ordinarily the questions will be for the jury.
 

 State v. Alston,
 

 193 N.C.App. 712
 
 , 716,
 
 668 S.E.2d 383
 
 , 386-87 (2008) (citations, quotation marks, and emphasis omitted),
 
 aff'd per curiam,
 

 363 N.C. 367
 
 ,
 
 677 S.E.2d 455
 
 (2009).
 

 In
 
 Rich,
 
 the defendant argued that insufficient evidence established that she possessed cocaine, which the police had found in the bedroom of a house.
 
 Rich,
 

 87 N.C.App. at 382
 
 ,
 
 361 S.E.2d at 323
 
 . The State proffered evidence that
 

 defendant was seen on the premises the evening before [the search], that on the night of her arrest she was cooking dinner at the house when the agents arrived, that women's casual clothes and undergarments were found in the bedroom [where the cocaine was found], and that mail
 
 *804
 
 addressed to defendant, including an insurance policy listing the house as her residence, was found in the house.
 

 Id.
 

 This Court held that this evidence was sufficient to show that the defendant had nonexclusive control of the premises.
 

 Id.
 

 This Court held that the State also proffered evidence of "other incriminating circumstances" by establishing "more than [the] defendant's mere residence in the house."
 

 Id.
 

 at 382-83
 
 ,
 
 361 S.E.2d at 323
 
 . The State's "evidence showed that [the] defendant was present on the premises when the cocaine was found, that women's clothes and undergarments were in the room and in the dresser where the cocaine was found, and that letters with [the] defendant's name on them were also found in the room."
 

 Id.
 

 at 382
 
 ,
 
 361 S.E.2d at 323
 
 .
 

 Here, the State established defendant's nonexclusive control of the house by introducing the following evidence: (1) defendant spent hours at the house on the day of the search, either inside it or in the front yard washing the black truck; (2) the police found a piece of mail addressed to defendant at the house's address; (3) the police found photographs of defendant inside the house; and (4) several people visited the house while defendant was present, but no one visited the house while defendant was absent, other than a man who briefly walked in front of it.
 
 See
 
 id.
 

 Officer Barker found the drug paraphernalia in a room in "the southern part of the house" which appeared to be a common living area as it had a television, couch, bookcases, and other "general furniture items[.]" In describing this room, Officer Barker did not
 
 *808
 
 mention a bed or anything akin to bedroom furniture. But later Officer Barker testified that he found the drug paraphernalia in "the southern bedroom[.]" The jury could have reasonably inferred that defendant and any other residents treated this room as a common living area even though it may have been constructed as a bedroom. Officer Barker also testified that the digital scale was in plain view and that the marijuana grinder was on the bookshelf where he found the cash. Viewing the evidence in the light most favorable to the State and giving the State every reasonable inference therefrom, we hold that the evidence supports an inference that the police found the drug paraphernalia in plain view in a common living area where defendant, as a resident of the house, exercised nonexclusive control.
 
 See
 

 Robledo,
 

 193 N.C.App. at 524-25
 
 ,
 
 668 S.E.2d at 94
 
 .
 

 In addition, the following evidence constitutes "other incriminating circumstances" which prove "more than defendant's mere residence in the house": (1) defendant spent hours at the house on the day of the search, either inside it or in the front yard washing the black truck;
 

 *805
 
 (2) the defendant admitted to the police that he had a "blunt" in the black truck, which was parked in front of the house, and the police found marijuana in the black truck's console; (3) the police found marijuana in the house behind a photograph of defendant; and (4) several people visited the house while defendant was there, including a man who shook hands with defendant "as if they were passing an item back and forth."
 
 See
 

 Rich,
 

 87 N.C.App. at 382-83
 
 ,
 
 361 S.E.2d at 323
 
 (holding that evidence which showed that the "defendant was present on the premises when the cocaine was found," along with other evidence, constituted evidence of "other incriminating circumstances"). We find most significant the fact that the police found marijuana in a picture frame behind a photograph of defendant.
 
 [1]
 
 WE CONCLUDE THAT
 

 [a]lthough the evidence tends to show that defendant shared the house with at least one other individual,
 
 considering the totality of the circumstances,
 
 a reasonable inference may be drawn that defendant had the power to control the use and disposition of the [drug paraphernalia] since it was located in a common area of his residence.
 

 See
 

 State v. Baldwin,
 

 161 N.C.App. 382
 
 , 392,
 
 588 S.E.2d 497
 
 , 505 (2003) (emphasis added);
 
 Alston,
 

 193 N.C.App. at 716
 
 , 668 S.E.2d at 386-87 ("Our determination of whether the State presented sufficient evidence of incriminating circumstances depends on the totality of the circumstances in each case." (citation and quotation marks omitted)).
 

 Defendant argues that the fact that the police found marijuana behind a photograph of himself "suggests as much that someone else residing in the home had a picture of [defendant] as it did that [defendant] would have had a framed picture of himself by his bed." Defendant also points to the fact that a police officer found a feminine deodorant bar in that bedroom. But in reviewing a motion to dismiss, we view the evidence "in the light most favorable to the State" and give the State "every reasonable inference therefrom[.]"
 
 See
 

 Robledo,
 

 193 N.C.App. at 524
 
 , 668 S.E.2d at 94 (citation omitted). We hold that the jury could have reasonably inferred from the evidence as a whole that defendant had nonexclusive control of the house.
 
 See id.
 

 Defendant also argues that while the evidence might have been sufficient to support defendant's control over the black truck and therefore
 
 *806
 
 over the marijuana found in the truck's console, there was insufficient evidence "establishing his exclusive control over the home[.]" But in order to establish constructive possession, the State need not prove
 
 exclusive
 
 control; it is sufficient to prove nonexclusive control plus other incriminating circumstances.
 
 See
 

 Rich,
 

 87 N.C.App. at 382-83
 
 ,
 
 361 S.E.2d at 323
 
 . As discussed above, we hold that the State proffered evidence of defendant's nonexclusive control of the house plus other incriminating circumstances.
 

 Defendant relies on
 
 State v. McLaurin,
 

 320 N.C. 143
 
 ,
 
 357 S.E.2d 636
 
 (1987). But
 
 *809
 

 McLaurin
 
 is distinguishable. There, the State proffered evidence that the defendant lived at a house with other individuals, where the police had found drug paraphernalia, but the State presented no additional evidence relating to the defendant.
 
 McLaurin,
 

 320 N.C. at 146
 
 ,
 
 357 S.E.2d at 638
 
 . Our Supreme Court held that "because [the] defendant's control over the premises in which the [drug] paraphernalia were found was nonexclusive, and because
 
 there was no evidence of other incriminating circumstances linking her to those items,
 
 her control was insufficiently substantial to support a conclusion of her possession of the seized paraphernalia."
 
 Id.
 
 at 147,
 
 357 S.E.2d at 638
 
 (emphasis added).
 

 In contrast, here, the State proffered evidence of "other incriminating circumstances" linking defendant to the drug paraphernalia found in plain view in a common living area of the house: (1) defendant spent hours at the house on the day of the search, either inside it or in the front yard washing the black truck; (2) the defendant admitted to the police that he had a "blunt" in the black truck, which was parked in front of the house, and the police found marijuana in the black truck's console; (3) the police found marijuana in the house behind a photograph of defendant; and (4) several people visited the house while defendant was there, including a man who shook hands with defendant "as if they were passing an item back and forth."
 
 See
 

 Rich,
 

 87 N.C.App. at 382-83
 
 ,
 
 361 S.E.2d at 323
 
 . Following
 
 Rich,
 
 we hold that the State proffered sufficient evidence to establish defendant's constructive possession of the drug paraphernalia seized from the house.
 
 See
 
 id.
 

 Accordingly, we hold that the trial court did not err in denying defendant's motion to dismiss with respect to the charge of possession of drug paraphernalia.
 

 C. Possession of Marijuana with Intent to Sell or Deliver
 

 Defendant next argues that the trial court erred in denying his motion to dismiss with respect to the charge of possession of marijuana with intent to sell or deliver, because the State failed to proffer
 
 *807
 
 sufficient evidence linking him to the marijuana found in the uncovered fishing boat.
 

 The State produced no evidence linking defendant to the marijuana found in the boat other than the evidence that the boat was present in the yard. Sergeant McDonald testified that the boat was located roughly seventy feet from the side of the house and within the "curtilage" of the house. It is not clear why he used this term, but it is possible that the search warrant for the house also authorized a search of the curtilage so he described the boat as being within the curtilage and thus within the scope of the search warrant.
 
 [2]
 
 "Curtilage" is a term of art which is normally used in cases raising Fourth Amendment issues from a search and seizure without a warrant in an area near a defendant's residence. In that context, our Supreme Court has noted:
 

 The curtilage is the area immediately surrounding and associated with the home. In a non-Fourth Amendment case, we have said "the curtilage of the home will ordinarily be construed to include at least the yard around the dwelling house as well as the area occupied by barns, cribs, and other outbuildings."
 
 State v. Frizzelle,
 

 243 N.C. 49
 
 , 51,
 
 89 S.E.2d 725
 
 , 726 (1955) (citations omitted). The curtilage does enjoy some measure of Fourth Amendment protection, ... because it is intimately linked to the home, both physically and psychologically[.] As such, it serves as the buffer between the intimate activities of the home and the prying eyes of the outside world. But, law enforcement is not required to turn a blind eye to contraband or otherwise incriminating materials left out in the open on the curtilage. Neither is law enforcement absolutely prohibited from crossing the curtilage and approaching the home, based on our society's recognition that the knocker on the front door is
 
 *810
 
 treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers[.]
 

 As a buffer, the curtilage protects privacy interests and prevents unreasonable searches on the curtilage.
 

 *808
 

 State v. Grice,
 

 367 N.C. 753
 
 , 759-60,
 
 767 S.E.2d 312
 
 , 317-18 (citations, quotation marks, and ellipsis omitted),
 
 cert. denied,
 
 - -- U.S. ----, 135 S.ct. 2846, 192 L.ed.2d 882 (2015). "the curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life, and therefore has been considered part of [the] home itself for Fourth Amendment purposes."
 
 State v. Smith,
 
 ---N.C.App. ----, ----,
 
 783 S.E.2d 504
 
 , 511 (2016) (brackets omitted) (quoting
 
 Oliver v. United States,
 

 466 U.S. 170
 
 , 180,
 
 104 S.Ct. 1735
 
 , 1742,
 
 80 L.Ed.2d 214
 
 , 225 (1984) ).
 

 The protection afforded to curtilage under the privacy interest of [the] Fourth Amendment is determined by looking at four factors: "[ (1) ] the proximity of the area claimed to be curtilage to the home, [ (2) ] whether the area is included within an enclosure surrounding the home, [ (3) ] the nature of the uses to which the area is put, and [ (4) ] the steps taken by the resident to protect the area from observation by people passing by."
 

 Id.
 

 at --- - n. 2,
 
 783 S.E.2d at
 
 511 n. 2 (quoting
 
 United States v. Dunn,
 

 480 U.S. 294
 
 , 301,
 
 107 S.Ct. 1134
 
 , 1139,
 
 94 L.Ed.2d 326
 
 , 334-35 (1987) ).
 

 In
 
 Grice,
 
 police officers who approached the door of the defendant's home for a "knock and talk" noticed some plants growing in containers in an unfenced area about fifteen yards from the residence.
 
 367 N.C. at 754-55
 
 ,
 
 767 S.E.2d at 314-15
 
 . The officers recognized the plants as marijuana, seized them, and later arrested the defendant.
 
 Id.
 
 at 755,
 
 767 S.E.2d at 315
 
 . The defendant argued that evidence of the plants should have been suppressed because the officers' warrantless search and seizure of the plants violated the Fourth Amendment, as the plants were within the curtilage of his home and thus were protected.
 
 Id.
 
 at 757-59,
 
 767 S.E.2d at 316-17
 
 . Our Supreme Court rejected this argument, concluding "that the unfenced portion of the property fifteen yards from the home and bordering a wood line is closer in kind to an open field than it is to the paradigmatic curtilage which protects 'the privacies of life' inside the home."
 
 Id.
 
 at 760,
 
 767 S.E.2d at 318
 
 (quoting
 
 Oliver,
 

 466 U.S. at 180
 
 ,
 
 104 S.Ct. at 1742
 
 ,
 
 80 L.Ed.2d at
 
 225 ).
 

 Sergeant McDonald's testimony characterizing the boat as within the "curtilage" of the house does not make it so. His testimony in this regard is more of a legal conclusion than a factual description of the premises, and we note that on appeal, the State makes no argument in support of his conclusion. The facts in evidence cannot support his conclusion that the boat was actually within the curtilage. The evidence showed that the
 
 *809
 
 boat was out in the open, in an unfenced area of the yard about seventy feet from the home. There was no evidence that this area of the yard was in any way "intimately linked to the home," either "physically [or] psychologically[.]"
 
 See
 

 id.
 
 at 759,
 
 767 S.E.2d at 317
 
 (quoting
 
 California v. Ciraolo,
 

 476 U.S. 207
 
 , 212-13,
 
 106 S.Ct. 1809
 
 , 1812,
 
 90 L.Ed.2d 210
 
 , 216 (1986) ). In fact, the boat was farther from defendant's home than the marijuana plants were from the home of the defendant in
 
 Grice
 
 and was also located in an open, unfenced area.
 
 See
 

 id.
 
 at 754-55,
 
 767 S.E.2d at 314-15
 
 . In addition, all four
 
 Dunn
 
 factors militate against a conclusion that the boat was within the house's curtilage.
 
 See
 

 Dunn,
 

 480 U.S. at 301
 
 ,
 
 107 S.Ct. at 1139
 
 ,
 
 94 L.Ed.2d at 334-35
 
 . Thus, the boat was not in an area "intimately" associated with the home and could not be connected to defendant simply based upon its location in the yard.
 
 See
 

 Grice,
 

 367 N.C. at 759
 
 ,
 
 767 S.E.2d at 317
 
 (citation omitted).
 

 Nor was there any evidence to show that defendant had any ownership interest in or possession of the boat, even assuming that it was in his yard. Sergeant McDonald testified that the boat was located in a part of the yard which defendant had driven through when driving the truck behind the house, as observed by Officers Shuskey and Honaker. But Officers Shuskey and Honaker did not testify that they observed defendant near the boat, nor did they testify that they heard
 
 *811
 
 defendant leave the truck when he was out of their view or do anything that would indicate that he may have hidden the marijuana in the boat. As best we can tell from the testimony, Officers Shuskey and Honaker observed defendant driving through the right side of the yard, disappearing behind the house, and then driving back to the front, but there is no evidence that defendant stopped at the boat or hid anything in the boat, and the officers testified that he was aware of their presence at that point.
 
 [3]
 
 In addition, the police did not check to whom the boat was registered, and Sergeant McDonald testified that the boat was uncovered. The house had multiple bedrooms, and Officer Honaker testified that at 12:01 p.m., he had observed another man working on a white truck in the carport of the house, so the boat may have belonged to someone else residing in the home. But there was no evidence regarding the ownership or use of the boat or of any items found within the boat which could have connected it to defendant or anyone else. And even if the boat had been
 
 *810
 
 within the curtilage, it still does not automatically follow that defendant had actual or constructive possession of every item within the curtilage, just as the fact that if an item is found in a house where a defendant and other people live does not mean that the defendant automatically had actual or constructive possession of that item.
 

 The "other incriminating circumstances" as noted above are not particularly strong, even for the drug paraphernalia, and are simply too weak to connect defendant to the marijuana found in the boat so far from the house. Those circumstances were, as noted above, that (1) defendant spent hours at the house on the day of the search, either inside it or in the front yard washing the black truck; (2) the defendant admitted to the police that he had a "blunt" in the black truck, which was parked in front of the house, and the police found marijuana in the black truck's console; (3) the police found marijuana in the house behind a photograph of defendant; and (4) several people visited the house while defendant was there, including a man who shook hands with defendant "as if they were passing an item back and forth."
 
 See
 

 Rich,
 

 87 N.C.App. at 382-83
 
 ,
 
 361 S.E.2d at 323
 
 .
 

 These circumstances generally tend to show that defendant did reside in the house, but most significant is the fact that the police found marijuana in a picture frame behind a photograph of defendant. As noted above, defendant argues that it is unlikely that a person would display a photograph of himself and that he would hide his own marijuana behind it, but a jury could certainly infer that defendant himself did this.
 
 See
 

 Robledo,
 

 193 N.C.App. at 524
 
 , 668 S.E.2d at 94. That fact thus provides some evidence of other incriminating circumstances linking defendant to the drug paraphernalia found in the house, but it cannot connect defendant to something found in an open boat in the yard so far from the house. We therefore hold that the State failed to present sufficient evidence of defendant's constructive possession of the marijuana found in the boat.
 
 See
 

 McLaurin,
 

 320 N.C. at 147
 
 ,
 
 357 S.E.2d at 638
 
 ("[B]ecause [the] defendant's control over the premises in which the paraphernalia were found was nonexclusive, and because there was no evidence of other incriminating circumstances
 
 linking
 
 her to those items, her control was insufficiently substantial to support a conclusion of her possession of the seized paraphernalia." (emphasis added)). In other words, the State's evidence was insufficient to convince any rational juror
 
 beyond a reasonable doubt
 
 that defendant constructively possessed the marijuana found in the boat.
 
 See
 

 Penland,
 

 343 N.C. at 648
 
 ,
 
 472 S.E.2d at 741
 
 (In reviewing a motion to dismiss, we "must determine
 
 *811
 
 whether 'any rational trier of fact could have found the essential elements of the crime
 
 beyond a reasonable doubt.
 
 ' " (emphasis added and emphasis omitted) (quoting
 
 Jackson,
 

 443 U.S. at 319
 
 ,
 
 99 S.Ct. at 2789
 
 ,
 
 61 L.Ed.2d at
 
 573 ));
 
 State v. Marshall,
 

 94 N.C.App. 20
 
 , 29, 33-34,
 
 380 S.E.2d 360
 
 , 365-66, 368 (noting that the trial court excluded evidence that the police had found marijuana
 
 *812
 
 in a car parked within the curtilage of the defendant's house, which was registered to a woman living at the house with the defendant, "because the State failed to link its possession or control to the defendant"),
 
 appeal dismissed and disc. review denied,
 

 325 N.C. 275
 
 ,
 
 384 S.E.2d 526
 
 (1989).
 

 Officer Honaker opined that the marijuana found in the boat was packaged for sale and Ms. Battin testified that the total amount of marijuana recovered was more than one half of an ounce. But excluding the marijuana found in the boat, the State did not proffer sufficient evidence to convince any rational juror beyond a reasonable doubt that defendant had actual or constructive possession of the marijuana or committed all the elements of the offense of possession of marijuana with intent to sell or deliver.
 
 See id.;
 

 State v. Carr,
 

 145 N.C.App. 335
 
 , 341,
 
 549 S.E.2d 897
 
 , 901 (2001) ( "The offense of possession with intent to sell or deliver has the following three elements: (1) possession of a substance; (2) the substance must be a controlled substance; (3) there must be intent to sell or distribute the controlled substance."); N.C. Gen.Stat. § 90-95(a)(1). On appeal, the State directs us to no other evidence to support defendant's conviction for possession of marijuana with intent to sell or deliver. Accordingly, we hold that the trial court erred in denying defendant's motion to dismiss with respect to the charge of possession of marijuana with intent to sell or deliver and thus vacate that conviction.
 
 See
 

 Robledo,
 

 193 N.C.App. at 525
 
 , 668 S.E.2d at 94.
 

 Although the trial court did not consolidate defendant's convictions in sentencing, we remand the case for resentencing out of an abundance of caution. We note that in sentencing defendant for the possession of drug paraphernalia conviction, the trial court found that a longer period of probation was necessary than that which is specified in N.C. Gen.Stat. § 15A-1343.2(d) (2013), although we cannot discern if the other conviction influenced the trial court's determination. It is also possible that the conviction of possession of marijuana with intent to sell or deliver had no effect upon the sentencing for the conviction of possession of drug paraphernalia, and if so, the trial court need not revise the sentence on remand. Accordingly, we remand the case to the trial court for resentencing in light of this opinion.
 

 *812
 
 III. Conclusion
 

 For the foregoing reasons, we hold that the trial court did not err in denying defendant's motion to dismiss with respect to the charge of possession of drug paraphernalia but that it did err in denying defendant's motion to dismiss with respect to the charge of possession of marijuana with intent to sell or deliver. Accordingly, we hold that that the trial court committed no error in convicting defendant of possession of drug paraphernalia, vacate defendant's conviction for possession of marijuana with intent to sell or deliver, and remand for resentencing.
 

 NO ERROR IN PART, VACATED IN PART and REMANDED.
 

 Judges STEPHENS and DAVIS concur.
 

 [1]
 

 We note that it appears from the record that defendant was not indicted for simple possession of marijuana, and the State did not proffer evidence of the amount of this marijuana although it almost certainly was not large given its location.
 

 [2]
 

 The search warrant is not in our record and defendant has not raised any argument regarding the scope of the search conducted under the search warrant, and we express no opinion upon that issue. We discuss the use of the term "curtilage" only because it was used in the evidence and because the State relies upon this term in its argument that the boat was within defendant's area of constructive possession.
 

 [3]
 

 Using a map, Officer Shuskey clarified the two locations from which he and Officer Honaker observed defendant, but we do not have this map in the record on appeal. Nevertheless, we have carefully reviewed their testimony and have given the State the benefit of every reasonable inference based upon their descriptions.
 
 See
 

 Robledo,
 

 193 N.C.App. at 524-25
 
 ,
 
 668 S.E.2d at 94
 
 .