STATE OF NORTH CAROLINA v. DANNY BOYD, Defendant

No. COA05-63

(Filed 18 April 2006)

**1. Search and Seizure— warrant—false statements—sufficiency of unchallenged statements**

The unchallenged statements in a search warrant were sufficient to support a conclusion of probable cause where defendant alleged that some statements in the affidavit were false.

**2. Evidence— hearsay—excited utterance—seizure of defendant's girlfriend**

A hearsay statement by a cocaine defendant's girlfriend that "we gots to be more careful" was properly admitted under the excited utterance exception. The statement occurred when she arrived home, was seized by police in her front yard, and led handcuffed into her own residence. She was upset and shaking before the statement and burst into tears immediately afterwards.

**3. Evidence— shotgun—found in drug house—relevant**

A shotgun found in a house in which drugs were found was properly admitted as relevant to charges of possession and trafficking cocaine and a jury could have found the shotgun consistent with the charge of maintaining the dwelling for keeping or selling cocaine. Defendant did not specifically demonstrate unfair prejudice.

**4. Confessions and Incriminating Statements— booking question—defendant's address—maintaining a dwelling for drugs**

A booking question about a cocaine defendant's address did not fall within a Miranda exception and defendant's answer was not admissible where the charges against defendant included maintaining a dwelling for the possession or sale of cocaine. There was prejudice because, in the absence of the booking question, there was insufficient evidence of the charge.

**5. Drugs— possession of cocaine—sufficiency of evidence**

There was sufficient evidence for constructive possession of cocaine where defendant admitted the drugs were his, there was sufficient evidence of non-exclusive possession of the premises, a large amount of individually wrapped cocaine was found in a

room adjacent to the room in which defendant was found swallowing similar plastic bags, defendant had a white residue around his mouth, and defendant possessed a scanner.

Appeal by defendant from judgment entered 15 January 2003 by Judge W. Russell Duke, Jr. in Pasquotank County Superior Court. Heard in the Court of Appeals 1 November 2005.

*Attorney General Roy Cooper, by Special Deputy Attorney General Thomas J. Ziko, for the State.*

*McCotter, Ashton & Smith, P.A., by Rudolph A. Ashton, III and Kirby H. Smith, III, for defendant-appellant.*

GEER, Judge.

Defendant Danny Boyd appeals from his convictions for possession of cocaine with intent to manufacture, sell, or deliver; trafficking in cocaine; and maintaining a dwelling for the purpose of keeping or selling cocaine. We uphold his convictions for possession and trafficking. With respect to his conviction on the maintaining a dwelling charge, however, we hold that the trial court erred when it allowed a police officer to testify that, prior to being Mirandized, defendant had incriminated himself by giving his home address in response to a routine booking question. Defendant is, therefore, entitled to a new trial on that charge. In addition, as the State concedes, defendant is entitled to a new sentencing hearing on the conviction of possession of cocaine because the trial court erroneously found as an aggravating factor that defendant had joined with more than one other person in committing his crimes.

### Factual and Procedural History

The State's evidence tended to show the following facts. In late 2001, the Pasquotank County Sheriff's Office launched an investigation into a residence located at 809 Wilson Street in Elizabeth City. During a two-month surveillance of the residence, police officers observed a steady stream of "individuals coming to the residence and staying only a few minutes then leaving. They were on foot and also coming up in vehicles." On 18 January 2002, the police, using a confidential informant, completed a controlled purchase of crack cocaine from defendant at the Wilson Street residence. That same day, based on (1) the evidence from the confidential informant, (2) the officers' surveillance of the residence, and (3) information and complaints

STATE v. BOYD

[177 N.C. App. 165 (2006)]

from citizens during the course of the investigation, police officers obtained a search warrant authorizing them to search both defendant and the Wilson Street residence.

As soon as they had obtained the warrant, several police officers knocked on the door of 809 Wilson Street and announced loudly that they were with the Sheriff's Department and they had a search warrant. When no one answered, they used a sledgehammer to break down the door. As officers entered the house, they found defendant lying on a sofa, stuffing plastic bags into his mouth. Defendant initially resisted arrest, but after he was subdued, officers observed a white chalky substance around his mouth consistent with wet cocaine.

Shortly thereafter, Lisa Robinson, defendant's girlfriend, appeared at the house. Officers intercepted her outside, detained her, handcuffed her, and brought her inside, where she was shown a copy of the search warrant. Witnesses described her as "extremely upset," "shaking," and "extremely excited." As soon as she saw defendant, she said, "[W]e gots to be more careful" and started to cry.

As police searched the residence, they found defendant's 12-year-old son in the kitchen and three young girls in one of the bedrooms. In a second bedroom, containing a single bed and children's and men's clothes, officers located 27 clear plastic bags containing various amounts of cocaine. The bags were concealed behind blinds in the space between an interior window and an exterior storm window. All told, the cocaine in the bags added up to approximately 280-300 grams, with a street value of approximately $28,000.00 to $30,000.00. In a third bedroom, containing a double bed, officers found an unloaded .12 gauge shotgun hidden in a closet behind female clothing. Officers also recovered a phone bill addressed to Lisa Robinson at the Wilson Street residence, as well as a box containing a handheld scanner and a receipt for the scanner from Advance Auto Parts. The receipt bore defendant's name and the Wilson Street address.

The police took defendant and Ms. Robinson to the police station, where they were each charged with (1) trafficking in cocaine; (2) possession of cocaine with intent to manufacture, sell, or deliver; and (3) maintaining a dwelling for the purpose of keeping or selling cocaine. Defendant was booked by Officer McKecuen, the same police officer who had arrested him. Prior to advising defendant of his *Miranda* rights, Officer McKecuen asked defendant a number of routine booking questions, including his name, age, date of birth, next of kin, and

home address. In response to the inquiry about his address, defendant responded that he lived at 809 Wilson Street.

Immediately after booking, defendant was read his *Miranda* rights, and he agreed to talk to the police without exercising his right to have an attorney present. When defendant was asked whether the cocaine found in the 809 Wilson Street residence belonged to him or Ms. Robinson, defendant responded: "It's mine." When he was asked to memorialize this admission in writing, defendant wrote "it's mine" on a piece of paper, but refused to sign the paper.

Defendant was later indicted for one count of trafficking in cocaine; one count of possession of cocaine with intent to manufacture, sell, or deliver; and one count of maintaining a dwelling for the purpose of keeping or selling cocaine. A jury convicted him of all three charges on 15 January 2003. At sentencing, the trial court imposed a presumptive range sentence of 70 to 84 months on the trafficking charge. With respect to the charges of possession of cocaine with intent to manufacture, sell, or deliver and maintaining a dwelling for the purpose of keeping or selling cocaine, the trial judge sentenced defendant in the aggravated range to consecutive terms of 10 to 12 months and 8 to 10 months respectively. As an aggravating factor for each offense, the judge found that defendant had "joined with more than one other person in committing the offense and was not charged with committing a conspiracy." Although defendant did not give timely notice of appeal, this case comes before us pursuant to our grant of certiorari on 5 November 2003.

## Defendant's Motion to Suppress

[1] Defendant first assigns error to the trial court's denial of his motion to suppress the evidence seized from the Wilson Street residence, arguing that the search warrant was invalid because of false statements contained in the affidavit submitted in support of the request for a warrant. With respect to an affidavit supporting a search warrant, if a defendant shows that "(1) the affiant knowingly or with reckless disregard for the truth made false statements; and (2) the false statements are necessary to the finding of probable cause, then 'the warrant is rendered void, and evidence obtained thereby is inadmissible . . . .' " *State v. Rashidi*, 172 N.C. App. 628, 633, 617 S.E.2d 68, 72 (quoting *State v. Fernandez*, 346 N.C. 1, 13, 484 S.E.2d 350, 358 (1997)), *aff'd per curiam*, 360 N.C. 166, 622 S.E.2d 493 (2005).

Here, defendant argues that the affidavit falsely stated that (1) the police received complaints about criminal activity by defendant, when in fact the complaints pertained more generally to the Wilson Street residence; (2) defendant had been served with criminal papers at the Wilson Street address, when actually he had been served with civil papers; and (3) by means of a hidden transmitter, the affiants were able to overhear a conversation between defendant and the confidential informant at the time of the controlled buy, when in fact the transmitter did not pick up any voices except for the informant's. We need not decide whether defendant sufficiently established that these were knowing or reckless falsehoods because even if those assertions are omitted, the affidavit is still sufficient to support a finding of probable cause. *See Rashidi*, 172 N.C. App. at 634, 617 S.E.2d at 73 (holding that when the affidavit was considered without the allegedly false statements, it still indicated the presence of probable cause; therefore, it was unnecessary to reach the issue whether the false statements were made knowingly or recklessly).

North Carolina uses a "totality of the circumstances" test to assess whether probable cause exists for the issuance of a search warrant. *State v. Arrington*, 311 N.C. 633, 643, 319 S.E.2d 254, 260-61 (1984). Generally, an affidavit supporting a search warrant

is sufficient [to establish probable cause] if it supplies reasonable cause to believe that the proposed search for evidence probably will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender. . . . The facts set forth in an affidavit for a search warrant must be such that a reasonably discreet and prudent person would rely upon them before they will be held to provide probable cause justifying the issuance of a search warrant.

*Id.* at 636, 319 S.E.2d at 256 (internal citations omitted).

In the present case, the unchallenged statements in the affidavit show that 20 different sources contacted police over a six-month period to complain about criminal activity occurring in the Wilson Street residence; two months' surveillance of the residence revealed substantial coming and going by individuals who stayed at the house only for very short periods of time; a confidential informant submitted to a full search by officers, made a controlled buy of cocaine at 809 Wilson Street, and returned with cocaine that he promptly gave to the police; and the confidential informant identified defendant as the individual who had sold him the cocaine. Taken as a whole, this infor-

mation, set forth in the challenged affidavit, is sufficient to support the conclusion that probable cause existed to search defendant and the Wilson Street residence.

While the unusual traffic at the residence was not sufficient, by itself, to constitute probable cause, the additional evidence regarding the controlled buy by an informant under surveillance of the officers was sufficient to support issuance of the search warrant. *See State v. Collins,* 56 N.C. App. 352, 355, 289 S.E.2d 37, 39 (1982) (probable cause to search existed when officer watched informant enter house and return several minutes later with LSD that he gave to officer); *State v. McLeod,* 36 N.C. App. 469, 472, 244 S.E.2d 716, 719 (probable cause to search existed when officer watched informant enter building and return with marijuana that he gave to officer), *cert. denied,* 295 N.C. 555, 248 S.E.2d 733 (1978). Contrary to defendant's argument, it was unnecessary, under these facts, for the State to make any showing addressing the credibility and reliability of the informant. *Collins,* 56 N.C. App. at 355-56, 289 S.E.2d at 40 (holding that the affidavit describing a controlled buy was not required to contain facts establishing that the informant was credible or his information reliable). Defendant's first assignment of error is, therefore, overruled.[1]

## Hearsay

**[2]** Defendant next argues that the trial court improperly admitted, over his objection, Ms. Robinson's statement to defendant: "[W]e gots to be more careful." Defendant contends that Ms. Robinson's statement was hearsay and, therefore, inadmissible under N.C.R. Evid. 802. We hold that the statement was properly admitted under N.C.R. Evid. 803(2), the excited utterance exception to the hearsay rule.

Rule 803 states: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . . (2) Excited Utterance.—A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The reason for allowing the excited utterance exception is that "circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces spontaneous and sincere utterances." *State*

---

1. Defendant also argues, in a general manner, that the findings of fact in the trial court's order denying his motion to suppress are unsupported by competent evidence. Because defendant did not specifically assign error to any of the findings in the trial court's order, he has not preserved this issue for appellate review. N.C.R. App. P. 10(a) (providing that "the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal").

*v. Reid*, 335 N.C. 647, 662, 440 S.E.2d 776, 784 (1994) (internal quotation marks omitted).

Ms. Robinson's statement, given the circumstances under which it was made, fits within the excited utterance exception. She made her exclamation in reaction to the startling event of arriving home late in the evening, being seized in the front yard, and being led handcuffed into her own residence. An eyewitness testified that when she made the statement, she was upset and shaking, and immediately after making it, she burst into tears. These circumstances qualify the statement for admission as an excited utterance. *See State v. Beaver*, 317 N.C. 643, 650, 346 S.E.2d 476, 480-81 (1986) (admitting as an excited utterance a statement by defendant's mother—as the police brought defendant into his mother's house and told her he had been arrested for manufacturing marijuana—that "I told you you'd get caught. I told you not to mess with that stuff."); *State v. Guice*, 141 N.C. App. 177, 201, 541 S.E.2d 474, 489 (2000) (victim's statements properly considered to be excited utterances because they were made shortly after police found her, when she was crying and terrified), *appeal dismissed, disc. review denied in part, and disc. review allowed in part on other grounds*, 353 N.C. 731, 551 S.E.2d 112-13 (2001), *modified upon remand on other grounds*, 151 N.C. App. 293, 564 S.E.2d 925 (2002). Defendant's second assignment of error is, therefore, overruled.

## Admissibility of Shotgun

[3] Defendant next argues that the trial court should have excluded from evidence as irrelevant the shotgun found in the closet of the third bedroom. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R. Evid. 401.

In this case, the presence of a gun was relevant to the possession and trafficking charges. *See State v. Smith*, 99 N.C. App. 67, 72, 392 S.E.2d 642, 645 (1990) (holding that trial court could properly determine that evidence of a gun was relevant to the charge of possession with intent to sell or deliver cocaine because "[a]s a practical matter, firearms are frequently involved for protection in the illegal drug trade"), *cert. denied*, 328 N.C. 96, 402 S.E.2d 824 (1991); *see also State v. Willis*, 125 N.C. App. 537, 543, 481 S.E.2d 407, 411 (1997) (relying upon the "common-sense association of drugs and guns"). Further, a jury could conclude that the shotgun was consistent with maintaining

a dwelling for the purpose of keeping or selling cocaine, especially given the street value of the drugs found. While defendant argues that the evidence suggested the gun belonged to Ms. Robinson, the State also offered evidence suggesting that defendant was residing at the house with his son and was a full participant in the trafficking and possession of the cocaine.

As to defendant's argument that the gun was erroneously admitted because it was overly prejudicial in relation to its probative value under N.C.R. Evid. 403, "the determination of whether relevant evidence should be excluded [under Rule 403] is a matter left to the sound discretion of the trial court, and the trial court can be reversed only upon a showing of abuse of discretion." *State v. Wallace*, 351 N.C. 481, 523, 528 S.E.2d 326, 352-53, *cert. denied*, 531 U.S. 1018, 148 L. Ed. 2d 498, 121 S. Ct. 581 (2000). Since defendant has failed to specifically demonstrate how he was unfairly prejudiced beyond the inferences the jury was properly entitled to draw from the presence of the gun in the closet, we hold that the trial court did not abuse its discretion in holding that the gun's probative value was not unfairly outweighed by its prejudicial effect.

### Routine Booking Question

**[4]** Defendant next argues that the trial court erred by allowing, over defendant's objections, testimony that defendant, in response to a pre-*Miranda* routine booking question at the police station, told officers that 809 Wilson Street was his home address. Although courts across the United States have adopted various approaches in addressing routine booking questions in light of *Miranda*, *see* Meghan S. Skelton & James G. Connell, III, *The Routine Booking Question Exception to* Miranda, 34 U. Balt. L. Rev. 55, 78-94 (2004), the issue has been decided in this State by our Supreme Court's opinion in *State v. Golphin*, 352 N.C. 364, 409-10, 533 S.E.2d 168, 201 (2000), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305, 121 S. Ct. 1379 (2001). In *Golphin*, the Court wrote:

> [T]here is a limited exception to *Miranda* for routine questions asked during the booking process. . . . In an effort not to infringe upon an accused's constitutional rights, however, the exception is limited to *routine informational* questions necessary to complete the booking process that are *not* reasonably likely to elicit an incriminating response from the accused.

*Id.* at 406-07, 533 S.E.2d at 199-200 (internal citations and quotation marks omitted).

*Golphin* establishes that the key inquiry regarding the admissibility of a defendant's answer to a routine booking question is whether the question was " 'reasonably likely to elicit an incriminating response from the accused.' " *Id.* at 407, 533 S.E.2d at 200 (quoting *State v. Ladd*, 308 N.C. 272, 287, 302 S.E.2d 164, 173 (1983)). In this case, the State has conceded on appeal that "there is no doubt on the facts in this case that defendant's admission that he lived at 809 Wilson Street was the product of an [sic] custodial interrogation which Officer McKecuen fully expected to produce an incriminating response." Pointing to Officer McKecuen's affidavit in support of the request for a search warrant, the State further acknowledges that "the evidence proves that Office McKecuen fully expected that in response to that [booking] question defendant would make the incriminating statement that he lived at 809 Wilson Street." Indeed, the State does not dispute that the question was reasonably likely to elicit an incriminating response. Instead, the State asks that we adopt a different rule than the one set forth in *Golphin*. We are bound by *Golphin* and, given *Golphin* and the undisputed record, we are compelled to hold that the question posed to defendant in this case does not fall within the routine booking question exception to *Miranda*. Because the answer was obtained in violation of *Miranda*, it was not admissible. *See Miranda v. Arizona*, 384 U.S. 436, 494, 16 L. Ed. 2d 694, 735, 86 S. Ct. 1602, 1638 (1966) (holding that fruits of custodial interrogation conducted without proper warnings were inadmissible).

"A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C. Gen. Stat. § 15A-1443(b) (2005). We hold that the State has not met this burden. If we consider the State's evidence pertaining to the Wilson Street residence, omitting defendant's incriminating response to the booking question, it is apparent that this evidence is insufficient to support a conviction for maintaining a dwelling for the purpose of keeping or selling cocaine.

N.C. Gen. Stat. § 90-108(a)(7) (2005) prohibits any person from:

knowingly keep[ing] or maintain[ing] any store, shop, warehouse, dwelling house, building, vehicle, boat, aircraft, or any place whatever, which is resorted to by persons using controlled substances in violation of this Article for the purpose of using such

substances, or which is used for the keeping or selling of the same in violation of this Article.

A pivotal factor is whether there is evidence that defendant owned, leased, maintained, or was otherwise responsible for the premises. *See State v. Harris*, 157 N.C. App. 647, 652, 580 S.E.2d 63, 67 (2003) (evidence insufficient to support maintaining a dwelling charge when defendant was seen at the house several times over a period of two months, an officer had spoken to defendant there twice during that time, and personal property of defendant was found in bedroom, but there was "no evidence that defendant owned the property, bore any expense of renting or maintaining the property, or took any other responsibility for the property"); *State v. Hamilton*, 145 N.C. App. 152, 154, 549 S.E.2d 233, 234-35 (2001) (evidence insufficient to support maintaining a dwelling charge when sole evidence tying defendant to address was a traffic citation with defendant's name on it, listing his address as the address in question); *State v. Bowens*, 140 N.C. App. 217, 221-22, 535 S.E.2d 870, 873 (2000) (evidence that defendant had been seen frequenting a residence and that a closet in the residence contained men's clothing was insufficient to support charge of maintaining a dwelling when no evidence indicated that defendant's name was on lease or utility bills, or that he was in any way responsible for dwelling's upkeep), *disc. review denied*, 353 N.C. 383, 547 S.E.2d 417 (2001).

Here, there was no evidence that defendant had any responsibility for the premises. While a jury could find that he lived there, the State offered no evidence that he participated in the leasing of the house, the payment of the rent, or the maintenance and upkeep of the premises. The only utility bill in evidence was in Ms. Robinson's name. In sum, the only valid pieces of evidence that tied defendant to the 809 Wilson Street residence were (1) the receipt from Advance Auto Parts, (2) the civil summons served upon defendant at that address, (3) the presence of male clothing, and (4) the fact that defendant sold drugs to the informant and remained at the residence until police executed the search warrant soon after the controlled buy. This evidence is materially indistinguishable from the evidence found insufficient in *Harris*, *Hamilton*, and *Bowens*.

Since in the absence of the answer to the booking question, the evidence is insufficient to convict defendant of the charge of maintaining a dwelling for the purpose of keeping or selling cocaine, we must reverse that conviction and order a new trial on that charge. Defendant's response to the booking question was not, however, nec-

essary to support his convictions on the remaining charges. Even when the challenged statement is omitted, substantial evidence of defendant's guilt on those two charges remains.

### Defendant's Motion to Dismiss

[5] Defendant next argues that his motion to dismiss his three charges for insufficiency of the evidence should have been granted. Because we have ordered a new trial on the maintaining a dwelling conviction, we address the motion to dismiss only insofar as it relates to the possession and trafficking charges. Defendant's sole argument on appeal as to these charges is that the State did not present sufficient evidence that defendant had possession of any cocaine.

In ruling on a defendant's motion to dismiss, the trial court must determine whether the State has presented substantial evidence (1) of each essential element of the offense and (2) of the defendant's being the perpetrator. *State v. Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 255, *cert. denied*, 537 U.S. 1006, 154 L. Ed. 2d 404, 123 S. Ct. 488 (2002). " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 270 (2001) (quoting *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984)). When considering a motion to dismiss, the trial court must view all of the evidence presented "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818, 115 S. Ct. 2565 (1995).

Possession of a controlled substance may be actual or constructive. *State v. McLaurin*, 320 N.C. 143, 146, 357 S.E.2d 636, 638 (1987). "A person has actual possession of a substance if it is on his person, he is aware of its presence, and either by himself or together with others he has the power and intent to control its disposition or use." *State v. Reid*, 151 N.C. App. 420, 428-29, 566 S.E.2d 186, 192 (2002). Constructive possession, on the other hand, exists when the defendant, " 'while not having actual possession, . . . has the intent and capability to maintain control and dominion over' the narcotics." *Matias*, 354 N.C. at 552, 556 S.E.2d at 270 (quoting *Beaver*, 317 N.C. at 648, 346 S.E.2d at 480). When the defendant does not have exclusive possession of the location where the drugs were found, the State must make a showing of "other incriminating circumstances" in order to establish constructive possession. *Id.*, 556 S.E.2d at 271.

In this case, the State's evidence indicated that defendant admitted the drugs were his. There was also evidence of defendant's constructive possession of the drugs. A large amount of individually packaged cocaine was found in a room adjacent to the room where defendant was apprehended. The State offered evidence that would permit a reasonable juror to find that defendant lived at that house, which was rented by his girlfriend, including defendant's receipt of a civil summons at that address, the presence of his 12-year-old son and adult male clothing at the house, and a receipt listing his name and the Wilson Street address. This evidence is sufficient to support a finding of non-exclusive possession of the premises by defendant, even though the evidence does not establish that defendant was maintaining the dwelling. Further, the State offered evidence of incriminating circumstances, including testimony that defendant did not respond to the police's knock at the door, he was caught swallowing small plastic bags similar to the ones found to contain cocaine, he had a white substance around his mouth as he was being arrested, and defendant possessed a handheld "Uniden Bear Cat 20 channel, 10 band scanner." Finally, we have Ms. Robinson's statement that the two of them needed to be more careful.

This evidence, when viewed in the light most favorable to the State, constitutes substantial evidence of constructive possession by defendant of the cocaine. *See State v. Battle*, 167 N.C. App. 730, 733, 606 S.E.2d 418, 420 (2005) (holding evidence was sufficient to show defendant was in constructive possession of cocaine found in motel room, where defendant was in motel room registered to another when police officers conducted search, room contained a number of defendant's personal effects, including personal papers, and defendant's vehicle was parked in motel lot); *State v. Autry*, 101 N.C. App. 245, 252, 399 S.E.2d 357, 362 (1991) (evidence sufficient to show constructive possession when defendant was standing next to kitchen table whose contents included cocaine, cash, jacket, and pistol, and defendant admitted to ownership of jacket and cash). Defendant's arguments as to his motion to dismiss are, therefore, without merit, and this assignment of error is overruled.

## Sentencing

Defendant's final argument addresses the trial court's imposition of an aggravated range sentence with respect to the possession charge and maintaining a dwelling charge. The trial court found as an aggravating factor that the defendant "joined with more than one other person in committing the offense and was not charged with

committing a conspiracy." The State concedes on appeal that the trial court erred with respect to the two aggravated sentences since the record contains no evidence that any third person joined with defendant and Ms. Robinson in committing the crimes.

In addition to a new trial on the maintaining a dwelling charge, defendant is, therefore, also entitled to a new sentencing hearing with respect to his conviction for possession of cocaine with intent to manufacture, sell, or deliver. *See State v. Morston*, 336 N.C. 381, 411, 445 S.E.2d 1, 18 (1994) (remanding for re-sentencing when the State conceded an error in defendant's initial sentence); *State v. Scercy*, 159 N.C. App. 344, 354, 583 S.E.2d 339, 345 (same), *appeal dismissed and disc. review denied*, 357 N.C. 581, 589 S.E.2d 363 (2003).[2] Defendant's sentence with respect to his trafficking charge was in the presumptive range, and accordingly we leave that sentence undisturbed.

No error in part, new trial in part, and remanded for re-sentencing in part.

Judges WYNN and McGEE concur.

---

2. Because of the State's concession in this matter, we need not reach defendant's argument that the sentence was improper under *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403, 124 S. Ct. 2531 (2004).