**STATE v. HUERTA**

[221 N.C. App. 436 (2012)]

STATE OF NORTH CAROLINA v. VICENTE JUAREZ HUERTA

No. COA11-1401

(Filed 3 July 2012)

**1. Drugs—three bags of cocaine—combined before testing**

The extent to which defendant possessed more than 400 grams of cocaine was a question for the jury rather than the court where three bags of a white powder found in defendant's home were mixed together between preliminary and definitive testing. Prior decisions concerning the testing of combined amounts remain valid.

**2. Appeal and Error—preservation of issues—no objection to other evidence**

Defendant did not preserve for appellate review the question of the admission of a handgun found in the home in which he lived with other people where he objected to the admission of the handgun itself, but did not object to a significant amount of testimony concerning the firearm and did not argue plain error. Even if he had preserved the question for review, his argument concerning the gun was relevant to the trafficking charges and there was overwhelming evidence of guilt.

**3. Drugs—constructive possession—evidence sufficient**

The trial court did not err by refusing to dismiss a charge of trafficking in cocaine by possession for insufficient evidence where there was an anonymous tip and information from a DEA investigation that drug activities were occurring at a certain address; defendant was present at the address when officers went there and admitted that he lived there with his family; he had a pistol, ammunition and $9,000 in cash at the house; cocaine was found within easy reach in the attic; and the house had no residents other than defendant and his family. This evidence was sufficient to support a determination that defendant constructively possessed the cocaine.

**4. Drugs—maintaining a dwelling for keeping controlled substances—constructive possession—evidence sufficient**

The trial court did not err in a cocaine trafficking prosecution by denying defendant's motion to dismiss the charge of maintaining a dwelling for keeping controlled substances where the State

had presented sufficient evidence to support a finding that defendant constructively possessed the cocaine at issue in the case.

Appeal by defendant from judgment entered 18 May 2011 by Judge James M. Webb in Guilford County Superior Court. Heard in the Court of Appeals 25 April 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Durwin P. Jones, for the State.*

*Ryan McKaig for Defendant-appellant.*

ERVIN, Judge.

Defendant Vincente Juarez Huerta appeals from a judgment entered based upon his convictions for trafficking in more than 400 grams of cocaine by possession and maintaining a dwelling for the purpose of keeping and selling controlled substances. On appeal, Defendant argues that the trial court erred by admitting evidence identifying a substance seized from his house as cocaine; admitting a handgun and ammunition seized from his house into evidence; and denying his motion to dismiss the charges that had been lodged against him for insufficiency of the evidence. After a careful review of Defendant's challenges to the trial court's judgment in light of the record and the applicable law, we conclude that Defendant is not entitled to relief from the trial court's judgment.

## I. Factual Background

### A. Substantive Facts

In April, 2003, Detective Alexander Williams of the Greensboro Police Department was assigned to the Department's vice and narcotics section, which focused its attention upon "mid-level, higher level drug dealers" and "major drug traffickers that are operating in [the] area." On the afternoon of 23 April 2003, Detective Williams was contacted by Detective Larry Marshall, a colleague in the vice and narcotics section of the Greensboro Police Department, who was, at that time, assigned to work as a liaison with the United States Drug Enforcement Agency. On that occasion, Detective Marshall gave Detective Williams a list of street addresses in Greensboro that had been determined to be of interest during a recent DEA investigation, including 1409 Dorsey Street.[1] As a result, Detectives Williams,

---

1. The Dorsey Street address had also been the subject of a citizen's complaint in 2002 which alleged that drug sales might be occurring at that location.

Marshall, and D.D. James went to 1409 Dorsey Street for the purpose of investigating the illegal activities that were alleged to be occurring at that location.

As the officers approached the Dorsey Street residence, which was a "very small" single-story house with an attic above the hallway, Defendant arrived in a pick-up truck and parked in the driveway. After Detective Williams, who had observed an Hispanic woman and several children in the house, identified himself as a law enforcement officer, Defendant stated that he lived in the house and that the individuals in the residence were his wife and children. When Detective Williams asked if Defendant would speak with them, Defendant invited the officers inside.

After the investigating officers entered the house, Defendant and his wife displayed their drivers' licenses. At that point, Detective Williams explained that they "had a complaint about his residence being involved in narcotics, or narcotics activity, and at that point just asked if he would mind if we searched his house for any narcotics." Defendant consented to the requested search.

As the officers began to search Defendant's residence, Detective Williams asked Defendant if there were any guns in the house. In response to this inquiry, Defendant told Detective Williams that he had a firearm in his bedroom closet. At that location, investigating officers found a .40 caliber pistol and in excess of $9,000.00 in cash. Subsequently, investigating officers also found "two vehicle titles," one of which listed Defendant as the owner and gave the Dorsey Street residence as his address; "paperwork, and . . . two loaded .40 caliber magazines" in the bedroom closet as well. Defendant admitted that he was in the United States unlawfully; acknowledged that he had purchased the gun illegally; stated that he, his wife, and children had lived at the Dorsey Street address for about three years; and claimed that the cash that the investigating officers had found had been earned by him and his wife.

After Detectives James and Marshall searched the ground floor, Detective Williams stood on a chair, moved a piece of plywood covering an opening leading from the hall into the attic, and looked into the attic. At that point, Detective Williams saw "a book-sized greenish-colored package" which appeared "to be a kilogram-sized package of narcotics" "within arm's reach, not very far from the opening of the attic space." After Detective Marshall opened the package, Detective Williams "observed that it contained [a] white powder substance, which [he] suspected to be cocaine."

At that point, Defendant was placed under arrest, and Detective Williams conducted a further search of the attic. During that process, Detective Williams found a plastic bag containing ten individually wrapped packets of white powder and a "grocery bag contain[ing] two large plastic ziplock bags," each of which "contained [twelve] individually packaged amounts of the same white powdered substance." Although the officers kept the powder for testing, they decided to have the packaging material subjected to fingerprint analysis. As Detective Williams explained:

> . . . . In order to have these items fingerprinted, you can't submit these items with the cocaine in the packaging. . . . [W]e would have packaged, for example, the kilogram amount, the book-sized amount I described, that would have been one package. One of the grocery bag items I described, that would have been a second package. And then the third grocery bag would have been a third package.

Patrick Sigafoos, a forensic specialist with the Greensboro Police Department, tested the packaging materials for the presence of fingerprints and found fifteen latent prints on a few of the plastic baggies. Amy Wild, a fingerprint examiner with the Greensboro Police Department, examined the latent fingerprints and determined that only five of them were identifiable and that none of the identifiable prints belonged to Defendant.

Special Agent Sheila Bayler of the State Bureau of Investigation tested the powder seized from Defendant's residence. After receiving the powder in three separate plastic bags, Special Agent Bayler weighed the three bags and performed initial chemical testing on the material contained in each bag, ultimately determining that the response of the powder in each bag to the chemical reagent was "consistent with each other." At that point, Special Agent Bayler combined the material contained in the three bags, explaining that, "when we are submitted evidence, if it is all collected from the same location, packaged in the same manner, appears the same, and gives us the same preliminary test, we combine the material for analysis to do one confirmation of the identity." After combining the contents of the three bags, Agent Bayler performed an infrared spectrophotometer test and determined that the material in the bags contained cocaine hydrochloride, which is "typically what people think of as powder cocaine," that had a combined weight of 1,729.5 grams. Although Special Agent Bayler tested the material in the bags for "a very broad range of [controlled and non-controlled] substances," she did not find

any substances in the mixture other than cocaine hydrochloride. According to Detective Williams, the cocaine seized from Defendant's residence would have had a street value of about $50,000.00 in 2003.

### B.  Procedural History

On 23 April 2003, magistrate's orders were issued charging Defendant with maintaining a house for keeping and selling controlled substances and trafficking in than 400 grams of cocaine by possession. On 7 July 2003, the Guilford County grand jury returned bills of indictment charging Defendant with trafficking in between 200 and 400 grams of cocaine by possession and maintaining a dwelling for the purpose of keeping and selling controlled substances. On 12 August 2003, a warrant for arrest was issued charging Defendant with failing to appear for trial. On 16 December 2003, the State dismissed the charges against Defendant with leave.

In September 2010, Defendant was returned to custody. On 29 November 2010, the Guilford County grand jury returned superseding bills of indictment charging Defendant with trafficking in more than 400 grams of cocaine by possession and maintaining a house for the purpose of keeping and selling controlled substances. The charges against Defendant came on for trial before the trial court and a jury at the 16 May 2011 Criminal Session of the Superior Court of Guilford County. At the conclusion of the trial, the jury convicted Defendant of trafficking in more than 400 grams of cocaine by possession and maintaining a dwelling for the purpose of keeping and selling controlled substances. At the ensuing sentencing hearing, the trial court consolidated Defendant's convictions for purposes of sentencing and sentenced Defendant to a term of 175 to 219 months imprisonment. Defendant noted an appeal to this Court from the trial court's judgment.

### II.  Legal Analysis

### A.  Testimony Concerning the Weight of the Cocaine

[1] As an initial matter, Defendant contends that "the trial court erred in admitting evidence about the identity of the substance as cocaine where no confirmatory test was ever conducted prior to all three of the bags being mixed together" and that, in the absence of the trial court's error, the record would not have contained sufficient evidence to support the jury's verdict. We are not persuaded by Defendant's argument.

As we have already established, investigating officers seized (1) a package containing a kilogram-sized brick of white powder; (2) a

plastic bag containing ten smaller plastic bags containing white powder; and (3) another plastic bag containing two other plastic bags, each of which contained twelve smaller baggies containing white powder, from Defendant's attic. Before sending the powder to the State Bureau of Investigation laboratory for testing, the officers removed the packaging material surrounding the powder and consolidated the powder into three bags—one of which held the powder that had been compressed into a brick and two bags that held the powder that had been contained in the smaller bags. As a result, the small bags found in each of the two larger plastic bags were mixed together and submitted for testing in two bags.

After receiving the bags at the State Bureau of Investigation laboratory, Special Agent Bayler performed a preliminary chemical test on the material contained in each of the three bags, noting that the material in each bag responded to the reagent that she used in exactly the same manner. At that point, Special Agent Bayler consolidated the contents of the three bags into a single mixture, performed a definitive test on that mixture, and determined that the mixture contained cocaine hydrochloride.

In challenging the admission of Special Agent Bayler's testimony that the substance seized from his residence was cocaine, Defendant asserts, in reliance upon *State v. Ward*, 364 N.C. 133, 694 S.E.2d 738 (2010), in which the Supreme Court held that prescription medications could not be identified as controlled substances based solely on a visual examination, and *State v. James*, ____ N.C. App ____, 715 S.E.2d 884 (2011), in which we held that a preliminary field test did not provide an adequate basis for identifying a particular substance as a controlled substance, that Special Agent Bayler's identification of the substance in the combined mixture as cocaine was inadmissible. In essence, Defendant argues that, because the preliminary testing was not sufficiently reliable to support Special Agent Bayler's identification testimony, the fact that the contents of each bag were mixed together prior to the performance of definitive testing precluded the jury from finding him guilty of trafficking in more than 400 grams of cocaine by possession. N.C. Gen. Stat. § 90-95(h)(3) (stating, in pertinent part, that "[a]ny person who sells, manufactures, delivers, transports, or possesses 28 grams or more of cocaine . . . or any mixture containing such substances, shall be guilty of a felony, which felony shall be known as 'trafficking in cocaine,' " with a person convicted of trafficking in more than 400 grams of cocaine to be punished as a Class D felon). However, the record clearly reflects that Special

**STATE v. HUERTA**

[221 N.C. App. 436 (2012)]

Agent Bayler did not base her testimony identifying the substance seized from Defendant's residence as cocaine on the preliminary test results. Instead, she based her identification testimony upon the infrared spectrophotometer testing that she performed on the mixture of all the powder seized from Defendant's residence, an approach which Defendant concedes to be a scientifically valid method for identifying cocaine. As a result, the extent to which the preliminary tests were sufficiently reliable to support an identification of the substance seized from Defendant's residence as cocaine has no bearing on the proper resolution of this case.

Although Defendant discusses the prerequisites that must be satisfied prior to the admission of expert testimony, he really appears to be arguing that, (1) because Agent Bayler combined the substance in each bag before performing a definitive test, she had no basis for opining that each separate bag contained cocaine at the time that those bags were seized from Defendant's residence; (2) that, given the manner in which the testing at issue in this case was performed, all of the cocaine could have been contained in the smallest of the three bags; and (3), for that reason, Defendant could have only been convicted of trafficking in cocaine based upon the weight of the cocaine in the smallest of the three bags. As Defendant's trial counsel argued in the court below:

> . . . . I would contend that, at the least, the most which could be admitted was package number one, the 250 grams, and, of course, that would drop from Level III to Level II as far as the quantity.
>
> . . . .
>
> . . . . [I]t's quite possible that the substance which was actually demonstrated to be cocaine could have been from any one of those three packages. If it was from package number one, that would be Level II trafficking rather than Level III trafficking, and that's essentially the basis of my objection.

Thus, we conclude that, while Defendant had not objected to the fact that Special Agent Bayler used infrared spectrophotometer testing in order to identify the combined mixture as cocaine, he does contend that the fact that all of the powder seized from Defendant's residence was combined into a single bag prior to the infrared spectrophotometer testing precludes any determination that all of the powder seized from Defendant's residence was cocaine.

The fundamental problem with Defendant's argument is that this Court has rejected it on several occasions. For example, in *State v. Worthington*, 84 N.C. App. 150, 352 S.E.2d 695, *disc. review denied*, 319 N.C. 677, 356 S.E.2d 785, (1987), we considered a case in which a chemical analyst combined the contents of three separate containers of powder before testing the combined mixture. On appeal, the defend-ant argued that the State had failed to present sufficient evidence of the weight of the controlled substance at issue in that case given the absence of any way of knowing that all three of the bags had contained a controlled substance. As our opinion reflects:

> [The defendant] contends that the State failed to present sub-stantial evidence that the white powder . . . consisted, in its original form, of a cocaine mixture weighing 28 grams or more. . . . The chemist testified that the white powder . . . was contained in three separate plastic bags when he received it [, and] . . . was removed from the separate bags and combined into one bag prior to analysis. His laboratory analysis revealed that the bag contained 70 grams of a cocaine mixture. [The defen-dant] contends that the agent's mixing of the contents of the three separate bags precludes the State from presenting sufficient evidence of requisite drug quantity. He argues that, prior to the mixing, two of the bags may have contained nothing but a cutting agent while the third bag may have contained a quantity of cocaine insufficient to support the trafficking offense charged.

*Worthington*, 84 N.C. App. at 160-61, 352 S.E.2d at 702. In rejecting the defendant's argument, the Court reviewed previous cases addressing the same issue, stating that:

> In *State v. Teasley*, 82 N.C. App. 150, 346 S.E. 2d 227 (1986), [*appeal dismissed*, 318 N.C. 701, 351 S.E.2d 759 (1987),] a large quantity of white powder in a sealed plastic bag was found on a shelf at the defendant's residence. A smaller quantity of white powder was discovered on a glass table approximately 18 inches away from the shelf. An officer . . . combined the two substances in the large plastic bag. This court held that, on the evidence pre-sented, it was for the jury to decide whether the defendant pos-sessed the requisite quantity of cocaine to support a conviction for cocaine trafficking.

> In *State v. Horton*, 75 N.C. App. 632, 331 S.E. 2d 215, *cert. denied*, 314 N.C. 672, 335 S.E. 2d 497 (1985), the contents of six tinfoil packets were combined by a laboratory agent for analysis.

Combined, they contained 6.65 grams of heroin. Notwithstanding defendant's contention that all of the heroin could have been in one packet, this court held the evidence sufficient to support a conviction for heroin trafficking of the combined quantity.

Pursuant to *Teasley* and *Horton*, we hold that it was for the jury to decide whether defendant Warren possessed a mixture of cocaine weighing 28 grams or more.

*Worthington* at 161, 352 S.E.2d at 702. *See also State v. Dorsey*, 71 N.C. App. 435, 438, 322 S.E. 2d 405, 407 (1984) (upholding a conviction for trafficking in heroin despite the fact that no chemical analysis was performed upon the substance at issue in that case until after the contents of 105 bags had been combined, noting that "it is the weight of the mixture, rather than that of the drug itself, that controls"). As a result, in each of these cases, several containers of powder suspected to be a controlled substance were seized from the defendant and combined prior to the performance of chemical testing. Even so, on each occasion, we held that the jury should decide whether the defendant possessed the requisite amount of contraband and that speculation concerning the weight or concentration of the substance in each container did not render expert testimony that the combined mixture had a specific total weight inadmissible.

Defendant has not discussed these decisions in his brief or made any effort to distinguish them from the present case. Although these decisions antedated *Ward* and *James*, there is nothing in either of those decisions that casts any doubt whatsoever on the continuing validity of our prior controlled substance "combination" decisions. As a result, we conclude that the evidence at issue here was admissible and that the extent to which Defendant possessed more than 400 grams of cocaine was a question for the jury rather than for the court. Thus, Defendant is not entitled to relief from the trial court's judgment on the basis of this contention.

### B. Testimony Concerning the Handgun and Ammunition

**[2]** Secondly, Defendant argues that the "trial court, over [Defendant's] objections, [allowed the introduction of] evidence of a .40 caliber handgun and ammunition found in [his] closet during the search of his home." According to Defendant, given that his "home appears to have been shared with other people," the admission of the challenged evidence "allowed the jury to improperly link the gun and the drugs," rendering the challenged evidence irrelevant. Defendant's argument lacks merit.

As an initial matter, we must address the validity of Defendant's contention that he adequately preserved this issue for appellate review by objecting to the introduction of the evidence in question at trial. A careful review of the record, however, indicates that, while Defendant objected to the admission of the weapon and ammunition themselves, he did not object to considerable testimony concerning their discovery. For example, Detective Williams testified on direct examination that:

Q And given the nature of the complaint, if you will, and the reasons for the search that was conducted, were there any concerns regarding any weapons that might be located?

A Absolutely.

Q Can you tell me something, based upon your prior background and experience in investigating drug-related offenses, about the concerns for weapons?

A Yeah. Basically, those who engage in drug dealing, narcotics trafficking, are known to often carry weapons; firearms, other weapons.

. . . .

Q Did you ask about any weapons, any guns, anything that might create some sort of safety concern?

A Yes, I did. . . . I asked if there were any weapons in the house, any guns in the house, and [Defendant] stated that there were.

Q And did you ask him where the weapon might be located?

A Yes. He advised us that it was in his bedroom closet.

Q Okay. Did you provide that information to the other officers or did you retrieve the weapon yourself?

A I provided that information to Detectives Marshall and James, who were searching.

. . . .

A . . . . They recovered the .40 caliber pistol that [Defendant] admitted to. In the same closet where the pistol was located, they also located a substantial amount of currency. . . . After he had admitted about the gun and then the detectives had located the currency, I asked him about those particular items. . . . Basically, I asked [Defendant] where he had obtained the

handgun, and he admitted to me that he had obtained it ille-
gally. He said that he had bought it on the streets about two
years prior. He stated that he had bought the gun from a black
male whom [he did] not know.

As a result, a significant amount of testimony concerning the firearm
was introduced without objection by Defendant. "It is well estab-
lished that a criminal defendant loses the benefit of an objection
when the same or similar evidence is later admitted without objec-
tion." *State v. Robinson*, 346 N.C. 586, 603, 488 S.E.2d 174, 185 (1997)
(citing *State v. Alford*, 339 N.C. 562, 570, 453 S.E.2d 512, 516 (1995)).
As a result, since "Defendant did not object to this testimony at trial
and has not argued in his brief that admission of this evidence
amount[ed] to plain error," "we will not review this contention." *State
v. Williams*, 363 N.C. 689, 703, 686 S.E.2d 493, 502 (2009), *cert.
denied*, _____ U.S. _____, 131 S. Ct. 149, 178 L. Ed. 2d 90 (2010) (citing
N.C.R. App. P. 10(c)(4)).

Even if we were to address Defendant's challenge to the admis-
sion of the firearm and the ammunition on the merits, we would not
find his argument persuasive. As this Court has stated in rejecting an
argument quite similar to the one at issue here:

[T]he presence of a gun was relevant to the possession and traf-
ficking charges. . . . Further, a jury could conclude that the
shotgun was consistent with maintaining a dwelling for the pur-
pose of keeping or selling cocaine, especially given the street
value of the drugs found.

*State v. Boyd*, 177 N.C. App. 165, 171-72, 628 S.E.2d 796, 802 (2006)
(citing *State v. Smith*, 99 N.C. App. 67, 72, 392 S.E.2d 642, 645 (1990)
(holding that evidence that the defendant possessed a gun was rele-
vant to the charge of possession with intent to sell or deliver cocaine
because, "as a practical matter, firearms are frequently involved for
protection in the illegal drug trade"), *cert. denied*, 328 N.C. 96, 402
S.E.2d 824 (1991), and *State v. Willis*, 125 N.C. App. 537, 543, 481
S.E.2d 407, 411 (1997) (stating that there is a "common-sense
association of drugs and guns")). In addition, Defendant has failed to
establish that "there is a reasonable possibility that, had the [alleged]
error in question not been committed, a different result would have
been reached at the trial out of which the appeal arises," N.C. Gen.
Stat. § 15A-1443(a), given the overwhelming evidence of Defendant's
guilt. As a result, for all of these reasons, Defendant's challenge to
the admission of the gun and ammunition found in his residence
lacks merit.

## C. Motion to Dismiss

Finally, Defendant contends that the trial court erred by denying his motion to dismiss the charges that had been lodged against him on the grounds that the evidence was insufficient to support either of his convictions. Once again, we conclude that Defendant's argument lacks merit.

> "In ruling upon a motion to dismiss, the trial court must examine the evidence in the light most favorable to the [S]tate, giving the [S]tate the benefit of all reasonable inferences which may be drawn from the evidence." A motion to dismiss is properly denied where the State presents substantial evidence of each element of the crime charged and that defendant is the perpetrator of the offense. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence."

*State v. Alston*, 193 N.C. App. 712, 714, 668 S.E.2d 383, 385-86, (2008), (quoting *State v. Autry*, 101 N.C. App. 245, 251, 399 S.E.2d 357, 361 (1991), citing *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990), and quoting *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984), and *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988)), *aff'd*, 363 N.C. 367, 677 S.E.2d 455 (2009).

### 1. Trafficking by Possession

[3] As we have already noted, Defendant was convicted of trafficking in more than 400 grams of cocaine by possession and maintaining a house for the purpose of keeping or selling controlled substances. " 'To prove the offense of trafficking in cocaine by possession, the State must show 1) knowing possession of cocaine and 2) that the amount possessed was [400] grams or more.' " *State v. Acolatse*, 158 N.C. App. 485, 488, 581 S.E.2d 807, 809 (2003) (quoting *State v. White*, 104 N.C. App. 165, 168, 408 S.E.2d 871, 873-74 (1991)). In his brief, Defendant argues that the State did not prove that he possessed the cocaine seized from his residence.

"Possession can be actual or constructive. When the defendant does not have actual possession, but has the power and intent to control the use or disposition of the substance, he is said to have constructive possession." *State v. Baldwin*, 161 N.C. App. 382, 391, 588 S.E.2d 497, 504-05 (2003) (citing *State v. Butler*, 356 N.C. 141, 146, 567

S.E.2d 137, 140 (2002) (other citation omitted)). " 'Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession.' 'However, unless the person has exclusive possession of the place where the narcotics are found, the State must show other incriminating circumstances before constructive possession may be inferred.' " *State v. Hough*, 202 N.C. App. 674, 685, 690 S.E.2d 285, 292 (2010) (quoting *State v. Harvey*, 281 N.C. 1, 12, 187 S.E.2d 706, 714 (1972), and *State v. Davis*, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989)). "Our cases addressing constructive possession have tended to turn on the specific facts presented." *State v. Miller*, 363 N.C. 96, 99, 678 S.E.2d 592, 594 (2009). As a result:

> "North Carolina courts have cited a variety of factors that may be used in conjunction with the defendant's presence near the seized contraband to support a finding of constructive possession." "[C]onstructive possession depends on the totality of circumstances in each case," so that "[n]o single factor controls."

*State v. Ferguson*, 204 N.C. App. 451, 460, 694 S.E.2d 470, 477 (2010) (quoting *State v. Fortney*, 201 N.C. App. 662, 668, 687 S.E.2d 518, 523 (2010), and *State v. James*, 81 N.C. App. 91, 93, 344 S.E.2d 77, 79 (1986)). Assuming, without in any way deciding, that Defendant's home was not under his exclusive control, the record contains more than sufficient evidence tending to show the existence of the additional incriminating circumstances needed to permit the submission of the issue of Defendant's guilt of trafficking by possession to the jury on the basis of a constructive possession theory.

The evidence developed at trial, viewed in the light most favorable to the State, tended to show that: (1) in 2002, the Greensboro Police Department received an anonymous tip that drug sales were occurring at 1409 Dorsey Street; (2) in 2003, information concerning activities allegedly occurring at the same address emerged during a DEA investigation; (3) when law enforcement officers went to the Dorsey Street address on 23 April 2003, Defendant was present and admitted that he had lived there with his wife and children for the past three years; (4) Defendant had a .40 caliber pistol, which he admitted having purchased illegally; ammunition; and more than $9,000.00 in cash in his bedroom closet; (5) Defendant had more than $2,000.00 in cash on his person; (6) almost two kilograms of powder cocaine worth more than $50,000.00 in 2003 dollars were discovered

STATE v. HUERTA

[221 N.C. App. 436 (2012)]

within easy reach of an opening leading from the hallway area of Defendant's home to the attic; and (7) the house in question was "very small" and had no residents other than Defendant and his family. We have no difficulty whatsoever in concluding that this evidence sufficed to support a determination that Defendant constructively possessed the cocaine found in his attic.

In seeking to persuade us to reach a contrary conclusion, Defendant cites certain evidence that he contends would support a contrary finding, such as, for example, the fact that Defendant's fingerprints did not appear on the material with which the cocaine was packaged. However, "[o]n review of a denial of a motion to dismiss, this Court must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences," so that "[c]ontradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." *State v. Steele*, 201 N.C. App. 689, 692, 689 S.E.2d 155, 158 (2010) (citing *State v. Scott*, 356 N.C. 591, 596, 573 S.E.2d 866, 869 (2002).

In addition, Defendant makes several assertions which lack adequate record support. For example, Defendant contends that "there was evidence that other people lived at the residence as well." Although investigating officers did find several documents bearing the names of other people, including a vehicle title issued to Pedro Huerta Hernandez, one of Defendant's relatives, located in Defendant's bedroom closet alongside a vehicle title issued to Defendant; an identification card bearing information concerning Pedro Huerta Hernandez; and certain receipts and documents bearing the name of Defendant's landlord in the Dorsey Street residence, the house did not contain any clothing, furnishings, or personal possessions that belonged to anyone other than Defendant and his family. Moreover, Defendant never claimed at any point during his conversations with investigating officers that anyone else lived in the Dorsey Street residence. When considered in context, such evidence does not show "that other people lived at the residence." Similarly, Defendant stresses the existence of a "third bedroom" and argues that "another person could have been living in the third bedroom, the room in which the attic was located where the cocaine was found." However, the record contains no evidence definitively establishing that there was a third bedroom in the Dorsey Street residence. Moreover, the uncontradicted evidence shows that the attic was accessed from the hallway, rather than a bedroom. Finally, even if the record did contain evidence suggesting the presence of a third bed-

room or the possibility that another person might have resided at the Dorsey Street residence, that set of facts does not tend to show that the State failed to elicit sufficient evidence that Defendant possessed a sufficient quantity of cocaine to successfully withstand a motion to dismiss for insufficiency of the evidence. Thus, the trial court did not err by declining to dismiss the trafficking by possession charge.

### 2.  Maintaining a Dwelling for Using or Keeping Drugs

**[4]**  Secondly, Defendant was convicted of violating N.C. Gen. Stat. § 90-108(a)(7), which makes it "unlawful for any person" to "knowingly keep or maintain any . . . dwelling house, building, . . . or any place whatever, which is resorted to by persons using controlled substances in violation of this Article for the purpose of using such substances, or which is used for the keeping or selling of the same[.]" In challenging the sufficiency of the evidence to support his conviction for maintaining a dwelling for keeping controlled substances, Defendant questions "whether the State presented sufficient evidence that [Defendant] knew about the drugs in his attic." As we recently noted in addressing a similar contention, however, "our conclusion that the State presented substantial evidence to show Defendant was in constructive possession of the marijuana disposes of this argument." *State v. Hudson*, 206 N.C. App. 482, 492, 696 S.E.2d 577, 584, *disc. review denied*, 364 N.C. 619, 705 S.E.2d 360 (2010). Thus, given our previous determination that the State presented sufficient evidence to support a finding that Defendant constructively possessed the cocaine at issue in this case, we necessarily conclude that the trial court did not err by denying Defendant's motion to dismiss the maintaining a dwelling for the purpose of keeping or selling controlled substances charge that had been lodged against him for insufficiency of the evidence.

### III.  Conclusion

Thus, for the reasons set forth above, we conclude that none of Defendant's challenges to the trial court's judgment have merit. As a result, the trial court's judgment should, and hereby does, remain undisturbed.

NO ERROR.

Judges HUNTER and STROUD concur.